**WATER DOCTORS INTERNATIONAL, INC., et al., Appellants,**

v.

**Michael LUX and Charles Riley, Appellees.**

No. 12–96–00298–CV.

Court of Appeals of Texas, Tyler.

Oct. 23, 1997.

Rehearing Overruled Dec. 30, 1997.

Ken W. Good, Tyler, for appellants.

Reid William Martin, Tyler, for appellees.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

RAMEY, Chief Justice.

Appellants Water Doctors International, Inc. and Wakefield Marketing Group f/k/a Wakefield & Associates, Inc. ("Franchisors") appeal a zero damages award arising from a counterclaim for the collection of two promissory notes against Appellees Michael Lux and Charles Riley ( sometimes referred to as "Franchisees"). Following a jury finding that the Franchisees had failed to comply with the promissory note each of them had executed in favor of Franchisors, the jury found Franchisors were entitled to zero dollars as damages. On appeal, Franchisors raise two points of error challenging that finding.[1] We will affirm.

---

1. In addressing the points below, we decline to apply the "zero damages rule" set forth in Franchisors' brief. That rule has been rejected by commentators and other appellate courts on the basis that it is inconsistent with the Supreme Court's opinion in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986). The zero damages rule

On or about December of 1990, Lux and Riley each entered into a separate franchise agreement with Franchisors to sell automobile water leak repair services under the name of Water Doctors. The franchise included a license to do business under that name and to use certain methods of repairing wind, water and dust leaks in automobiles. As consideration for the franchise, each Franchisee paid Franchisor $35,000 and executed a $25,000, interest-free promissory note. Each note provided for the payment of fifty-nine monthly payments in the amount of $416 each, and a final payment of $456. Lux defaulted on his note leaving a balance due of $23,752.00, and Riley defaulted on his note leaving a balance due of $22,088.00.[2]

Shortly thereafter, in January of 1992, Franchisees brought suit against Franchisors for breach of contract, misrepresentation, deceptive trade practices, and fraud arising out of the franchise agreement. Franchisors counterclaimed seeking payment in full on the promissory notes Franchisees had executed in connection with their franchise agreements. Following a lengthy trial, the jury found that Franchisors had knowingly engaged in false, misleading or deceptive acts or practices and had knowingly engaged in an unconscionable action or course of action that was a producing cause of damages to the Franchisees. Question Numbers 5 and 6 in the verdict form then asked the following: "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Michael Lux [Charles Riley] for his damages, if any, that resulted from such conduct?" To this question, the jury answered "$35,000.00" with regard to each Franchisee. Question Number 10 then asked whether either Franchisee had failed to comply with the promissory note each executed with the Franchisors. To this question, the jury answered "yes" as to each Franchisee. Question Number 11, next asked them "[w]hat sum of money, if any, if paid now in cash, would fairly and reasonably compensate Water Doctors International, Inc., for its damages, if any, that resulted from such failure to comply?" The jury answered that each Franchisee owed "–0–." In Question Number 12, the jury was then asked whether Franchisors made fraudulent representations that induced the Franchisees to sign the promissory notes. To this final question, they responded "no" as to each Franchisee.

Following the jury's verdict, Franchisors filed a motion to disregard jury finding number 11 arguing that the "evidence offered by Plaintiff and admitted by the Court establishes as a matter of law that Plaintiff Michael Lux owes Water Doctors the sum of $23,752 on the promissory note and that Plaintiff Charles Riley owes Water Doctors the sum of $25,000 [sic] on the promissory note to Water Doctors." After denying that motion, judgment on the verdict was entered, and Franchisors filed a motion for judgment notwithstanding the verdict and a motion for new trial. Following the denial of both motions, Franchisors perfected the instant appeal wherein they raise two challenges to the sufficiency of the evidence.

■ By their first point of error, Franchisors allege that the trial court erred in overruling their motion to disregard the jury's finding to Question Number 11 and their motion for judgment notwithstanding the verdict because there is no evidence to support that jury finding, and the evidence conclusively establishes their damages as a matter of law. Franchisors further argue that this case is one uniquely suited to rendition because it involves promissory notes. In support of their position, they cite *Long v. Tascosa*, 678 S.W.2d 699, 704–705 (Tex. App.—Amarillo 1984, no writ).

is inconsistent with *Pool* "because it circumvents the requirement that, in order to reach the conclusion that the jury's finding is against the great weight and preponderance of the evidence, the court must expressly determine that the finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias." Justice Raul A. Gonzalez & Rob Gilbreath, *Appellate Review of a Jury's Finding of "Zero Damages,"* 54 Tex. B.J. 418 (May 1991)

2. The promissory note provided in relevant part: "FOR VALUE RECEIVED, Michael E. Lux [Charles Riley]("Franchisee"), promises to pay to the order of WATER DOCTORS INTERNATIONAL, INC. ("Franchisor"), the principal sum of Twenty–Five Thousand Dollars ($25,000.00)."

In *Long,* the jury was asked what amount "is due and owing as principal and accrued interest on the [\$35,000] Note dated August 5, 1980?" The jury answered "0.00." Thereafter, on the bank's motion the court disregarded the jury's answer, and found that the sum due and owing on the note was $45,789.80. *Long* appealed, and the court affirmed. *Id.* In the instant case, Franchisors argue that since the same issue is presented here, they are entitled to rendition on the liquidated sums conclusively established as due and owing under the notes. The instant case, however, is distinguishable from *Long.* Here, the jury was not asked what amount of principal was due and owing on the note; instead it was asked: "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Water Doctors International, Inc., *for its damages, if any,* that resulted from such failure to comply?" (emphasis added). The very nature of the question implies that there might be no damages owed to Franchisors.

The evidence at trial showed that before defaulting, Riley had paid \$ 2,912.00 on his note and Lux had paid \$1,248.00 on his note. Thus, from the jury's answer of "–0–" it must be concluded that the jury found the Franchisors had not been damaged in excess of the payments they had already received from Lux and Riley on the notes.

▮ Since, at trial, Franchisors bore the burden of proof on the issue of these damages, two obstacles must be overcome before their attack on the legal sufficiency of the evidence to support the adverse finding on damages can be sustained. *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 940 (Tex.1991); *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). First, the record must be examined for evidence that supports the jury's finding, while ignoring all evidence to the contrary. Second, if no evidence supports the jury's finding, the whole record must then be examined to determine if the contrary position is established as a matter of law. *Id..* Only if the contrary position is conclusively established will their point of error be sustained. *Kratz v. Exxon*

*Corporation,* 890 S.W.2d 899, 902 (Tex. App.—El Paso 1992, no writ).

Although the record is voluminous, *affirmative* evidence of damages suffered by the Franchisors is scant; what is more noticeable is the absence of such evidence. An examination of the record for evidence that supports the jury's finding in Question Number 11, however, shows that Riley testified he received a tool cabinet equipped with various items from the Franchisor, the value of which he believed was represented by the Franchisor to be over \$1,000.[3] In addition, he received a manual, a two-week training course, and one or two days' marketing aid from Franchisor's representative. Riley however, also testified that the computer program with which he had been supplied was defective, that the sponge tape supplied was likewise not usable in this climate, and that the marketing services he received were tantamount to a series of mere cold calls on various car dealerships. Lux and Riley were trained together with other franchisees in Canada, and their marketing efforts were conducted by Franchisor's representative during the same period of time; it can also be inferred from other testimony that Lux received the same equipment and training as Riley.

Ignoring all evidence to the contrary, we conclude that since the record contained evidence showing that any damages suffered by the Franchisors did not exceed amounts already paid on the promissory notes by the Franchisees, the Franchisors suffered no damages by virtue of the Franchisees' default on the notes. Thus, there was evidence to support the jury's finding in response to Question Number 11. Having so concluded, we need not determine whether Franchisors conclusively established the contrary position as a matter of law. *Sterner v. Marathon Oil Co.,* 767 S.W.2d at 690. Accordingly, point one is overruled.

▮ In point two, Franchisors argue that the jury's finding in response to Question Number 11 was against the great weight and preponderance of the evidence. This point was preserved by timely motion for

---

3. A copy of Schedule B, which was attached to the Franchise Agreement and lists the "Tools and Set Up Equipment Supplied To the Operator by the Company" is attached hereto as Appendix A.

new trial. In determining whether a jury finding is against the great weight and preponderance of the evidence, we must weigh all of the evidence and remand the cause for a new trial if we conclude that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). Even if the evidence might support a different result, since an appellate court is not a fact finder, it may not pass upon the credibility of the witnesses or substitute its judgment for that of the trier of fact. *Kratz*, 890 S.W.2d at 903; *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). A court is not authorized to interfere with the jury's resolution of conflicts in the evidence or pass on the weight or credibility of the witness's testimony. *Kratz*, 890 S.W.2d at 903. As long as there is sufficient competent evidence of probative force to support the jury's finding, it must be sustained, and "[wh]ere there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive." *Id. citing Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508, 511–12 (1947).

As noted above, Riley testified that he believed it had been represented to him that the equipped tool cabinet was valued at more than $1,000. Although a few of those items were defective, in addition thereto, he received two weeks training and one or two days' aid in marketing his new service. The marketing service, however, was heavily criticized by both Franchisees. Lux also testified that he received the same training and marketing services and received an equipped tool cabinet designed to fit a Ford Aerostar Van.

In addition to the evidence set forth above, Franchisors adduced the following evidence of damages which must be considered under this point of error. First, according to the franchise agreements, Franchisor provided accommodation and travel expenses for the Franchisees.[4] Additionally, Jim Smith, another franchisee who testified on behalf of Lux and Riley, testified on cross-examination as follows with regard to the value of items listed in Schedule B[5]:

 Q. [By Franchisors' attorney] All right. Do you have an opinion, sir, or an idea, since you received those, as to what they would have cost as part of the franchise package?

 A. I was told in the range of a about $18,000 worth of tools.

 Q. Does that seem a pretty accurate figure to you?

 A. I don't know.

 Q. Well, did you ever see anything that made you feel differently?

 A. Everything was adequate. I didn't really worry about it. It was part of the package.

When cross-examined as to whether he knew the cost of the two-week training program, he simply testified, "No." Then, when asked whether $2,500 to $3,000 seemed to be a fair price, he stated, "I guess. I don't have any idea."[6] As for the two-volume manual, Smith testified that he had no idea as to the cost incurred in putting together such a manual.

Having reviewed all of the evidence, we cannot say that the jury's finding in Question Number 11, is against the great weight and preponderance of the evidence. While evidence exists which conflicts with that in support of such jury's finding, the jury resolved those conflicts in favor of the Franchisees, and we are bound by their determination. *Kratz*, 890 S.W.2d at 903; *Clancy*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). Consequently, we overrule point two.

Judgment affirmed.

Appendix "A"

SCHEDULE B

---

4. Although the record reflects that Lux drove his newly purchased Ford Aerostar Van to Canada for training, Riley's means of travel is not reflected.

5. *See "Appendix A"* to this opinion.

6. Thereafter, however, when the Franchisors attempted to put this information before the jury in writing, the court sustained an objection to its admission on grounds that Smith had testified he had no idea as to the cost.

## TOOLS AND SET UP EQUIPMENT SUPPLIED TO
## THE OPERATOR BY THE COMPANY

1 Shutz gun
4 Plastic Bottles
1 Tool box (chest)
1 Buck Rodgers (cordless screwdriver)
1 Air ratchet
1 Hammer
1 Screwdriver set
1 Needle nose pliers
1 Channel lock pliers
1 Side cutters
1 Vise grip
1 Scratch-awl
1 Set of metric 1/4 drive deep sockets
1 Set of standard 1/4 drive deep sockets
1 Set of allen keys metric
1 Philips magnetic screwdriver
1 Trox magnetic screwdriver
2 Door sticker tool sockets
1 Long 1/4 extension
1 Cutting knife
1 Moulding tool
1 Plug remover
3 Assorted air fittings
1 Set of assorted magnetic tips and holder
1 50' air hose
1 50' water hose
1 Standard set of pliers
1 Custom made cabinet for truck
1 Standard set of combination wrenches 1/4 to 9/16
1 Metric set of wrenches 6mm to 10mm
1 3/8 drive ratchet
1 3/8 drive extension
1 13–piece drill bit set
1 Flashlight
1 Sealer pump (5 gal.size)
1 Sealer pail 1 15' hose
1 Following plate
1 lid
1 Lincoln swivel and fittings
1 Sealer gun
1 Sealer tip
12 Tubes of clear sealer (crest)
12 Tubes of black sealer (crest)
6 Tubes of silver sealer (crest)
6 Tubes of white sealer (crest)
1 Silicone paste
1 box of razor blades
5 Gallons of pump sealer
1 3 Gallon pails of black sealer (crest)
Dumb dumb (12 boxes)
Varsol (5 gal.)
Soap (2 gal.) (crest)
Sponge tape (1 roll) (crest) 5/16 × 1/8
Sponge tape (1 roll) (crest) 1' × 1/4
Sponge tape (1 roll) (crest) 3/16 × 1"
Sponge tubing (50' of ½, 50' of ½ x ½, 50' of 3/8, 50' of 1/4 (crest)
Stationery (1,000 invoices)

500 Business cards
100 sheets of stationery
1 Water Doctor Jacket (Spring or Fall)
50 Water Doctor Hats
5 Water Doctor Shirts
4 Water Doctor Sweaters
1 Computer (program for Water Doctor's) an assortment of clips and screws
1 Water Doctor Repair Manual ("The Manual")
1 Complete Set of signs for 1 Truck
1 Package of Chipboard