

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00525-CV

PATRICIA J. SUTTON                                                          APPELLANT

V.

KURT WILLIAM HELWIG, DAVID R.                                   APPELLEES
SHOOP, SHOOP'S TEXAS
TERMITE & PEST CONTROL AND
SHOOP'S ENTERPRISES, INC.

------------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

Pro se appellant Patricia J. Sutton filed the underlying negligence suit for personal injuries in 2007 after appellee Kurt William Helwig, driving a Shoop's vehicle, allegedly hit her car in 2005. At the 2012 trial, Sutton represented

---

[1]*See* Tex. R. App. P. 47.4.

herself pro se, and her testimony was the only evidence in her case in chief.  At the conclusion of her case in chief, the appellees—Helwig,  David R. Shoop, Shoop's Texas Termite & Pest Control, and Shoop's Enterprises, Inc.—moved for a directed verdict, which the trial court granted.

## II.  Directed Verdict, Evidentiary, and Due Process Complaints

In five interrelated issues containing multiple subissues, Sutton complains that the trial court erred by granting a directed verdict and abused its discretion by sustaining the appellees' evidentiary objections, limiting her opening statement, and generally conducting an unfair trial.

## A.  Plaintiff's Petition and Trial Testimony

In her petition, Sutton sought recovery for "severe bodily injuries to her head, neck, back, shoulders, torso, hips and legs," as well as "severe physical pain and mental anguish" and damages so that she could "receive proper medical care for the injuries incurred in [the] incident."  Sutton specifically sought recovery for medical expenses because she had "become indebted to Medicare for payment of medical services they [had] expended on her behalf and will have additional medical expenses in the future as a result of said incident."  Finally, Sutton also sought recovery for damage to her 1989 Buick Skyhawk, conceding in her petition that Shoop's insurer had paid for repairs to the vehicle but complaining that it was no longer in the same condition that it had been before the collision.

At trial, Sutton testified that she was born in 1943 and had many childhood pre-existing medical conditions before she suffered several back and other injuries in 1961, 1963, 1968, 1984, 1989, and 1990. At the time of the 2005 accident, Sutton was driving two people from her church on errands. She stopped the car at a red light at an intersection. Sutton said that her car was in the left-turn lane and that cross-traffic was three lanes. A white sports car was in the cross-traffic's inside lane, also making a left turn. An SUV was in the middle lane, and a red car was in the outside lane. The red car executed a right-hand turn and was out of her way.

Sutton stated that she "should probably have started" when the light turned green, but she needed to make a wide left turn to be able to get into the CVS parking lot that was her destination. The little white sports car "came out to turn left into the Country Club shopping center," and the SUV started to go at the same time. Sutton said that because of a bad car accident she had experienced in 1968, she did not go. Sutton then testified:

> He [appellees' lawyer] says I said I started to go, that I went, I—honest, I don't know. Whatever, I don't know. So the next thing I knew is that I—the next thing I knew is something had happened. And so this—the car—the seat—the driver's seat came off the railing. He says the impact was light, but the impact was so hard that it pushed my car all the way from back close to where I was stopped out into the actual center, the direct center of the intersection because when I got out of my car—I guess I sort of passed out because then all of the sudden I realized, gee, something has happened and my immediate reaction was thinking back to—you know, is this a repeat of what happened in '68? And I did.

3

And then all of a sudden, I just knew I hurt and I had to try to move again. So I got out of the car and I was standing in the middle of the intersection in shock. And I thought, what are all of these people doing around me? And so I had two people in the car with me. I don't think I'm allowed to talk about them, but I did have two people in the car with me. And they were yelling to me to get back in the car.

Sutton said that she got back into the car so that she could move it out of the street and then drove the car to a nearby parking lot. Helwig followed her in his vehicle, got out, came over to her, and said, "[M]y boss is going to take care of everything." Sutton testified that she called Shoop's and asked to speak with Mr. Shoop to tell him about the accident and what Helwig had said but was told by Shoop's employees that Mr. Shoop was out to lunch and unavailable. Sutton then called her insurance company and reported the accident.

Sutton drove her passengers to their home, took their groceries out of the car, took her car to the Buick dealership for repairs, and picked up a rental car. She concluded her direct testimony by stating, "My car received a lot of damage and I was hurt. I have been hurt since that day and my life has never been the same since that day." After the appellees' lawyer had no questions for her on cross-examination, Sutton rested her case, and the appellees moved for an instructed verdict on the grounds of no evidence of any reasonable and necessary medical expenses and less than a scintilla of evidence on liability. The trial court granted Sutton a brief recess to research the motion prior to granting it. Because Sutton complains that some of her evidence was improperly

4

excluded, we will address these complaints next before analyzing whether the directed verdict was proper and whether granting it denied her due process.

## B. Evidentiary Objections

Sutton argues that the trial court erred by sustaining the appellees' objections to her testimony about the law on eggshell skull, her pre-existing conditions, her photographic exhibit of the accident location, and her use of hearsay. We review all of these complaints for an abuse of discretion. *See Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 235 (Tex. 2011) (stating that a trial court's rulings admitting or excluding evidence are reviewable for an abuse of discretion). A trial court abuses its discretion if it acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

We first note that, as the trial court explained to Sutton during the trial, it is the trial court's role to define the particular legal principles applicable to a case.[2] *See Greenberg Traurig of New York, P.C. v. Moody*, 161 S.W.3d 56, 95 (Tex.

---

[2]After the appellees objected to Sutton's attempt to explain "the eggshell skull law" to the jury, the trial judge sustained the objection and told Sutton not to "quote laws" to the jury. Sutton then asked, "If I can't quote law to the Jury, how can I present facts that are on my side?" The trial judge replied, "Facts are different from the law. Just tell them the facts as you understand the facts." The trial judge reminded Sutton that he had told the jury that he would prepare the charge and that it would have in it all of the law and instructions they needed to make a decision based on the facts they would hear from the witness stand, finally stating, "I'm in charge of the law. You're not."

App.—Houston [14th Dist.] 2004, no pet.) (stating that a legal expert cannot usurp the trial court's role in trying the case). Therefore, the trial court did not abuse its discretion by sustaining the appellees' objection to Sutton's testimony about the eggshell skull rule.

Further, the record does not reflect that the trial court actually sustained any objections to Sutton's testimony about her pre-existing conditions. To the contrary, Sutton's testimony about her pre-existing conditions since her birth in 1943 was uninterrupted until the appellees' counsel began to object to what appeared to be the beginning of a hearsay statement in the following portion of Sutton's testimony pertaining to severe injuries she sustained in 1968:

> Ms. Sutton: . . . I went home and the next day I got up and I went back to work. I looked pretty bad. A lot of—I was a salesperson for a fabric company and a lot of people didn't want to look at me. They couldn't stand to look at me, but I went to see one of my customers and he said to me, he looked right at me and he said, Pat—
>
> Mr. Oldham: Your Honor, I object to –
>
> Ms. Sutton: Okay. Never mind, okay.

Sutton then continued with her recitation about her pre-existing injuries from 1984 onward without another interruption until she attempted to explain the eggshell skull rule. The trial court never ruled on the appellees' incomplete objection, which it would have had to sustain in order for Sutton to complain about it on appeal. *See* Tex. R. App. P. 33.1(a); *see also* Tex. R. Evid. 103(a)(2)

6

(requiring the substance of the excluded evidence to be made known to the court).

Furthermore, with regard to Sutton's complaint that the trial court erred by sustaining the appellees' objections to her photographic exhibit of the accident location, the following dialogue occurred at trial:

> Ms. Sutton: . . . [C]an I show the picture of Midwestern Parkway and Jacksboro Highway.
>
> The Court: If there's no objection to its admission into evidence and if there's an objection, I'll rule on the objection. If I rule that the pictures are admissible, then, yes, ma'am, you can show them to the Jury.
>
> Ms. Sutton: Okay. Do I have to enter it as an exhibit?
>
> The Court: Yes, ma'am.
>
> Ms. Sutton: Do you need more than one copy of it, Your Honor?
>
> The Court: No, ma'am.
>
> Ms. Sutton: I have a list of—
>
> The Court: She can't—I'm sorry. She can't type down what we're staying [sic] and make an exhibit numbered, so when you hand her an exhibit, you need to quit talking so she can mark the exhibit.
>
> (PLAINTIFF'S EXHIBIT NO. 1 MARKED.)
>
> Ms. Sutton: It's a small picture. You probably can't see it.
>
> Mr. Oldham: I object to showing it until it's been introduced.
>
> The Court: Yeah, that's why I told you you need to offer it into evidence. [Helwig] has an opportunity to object to it.

7

Ms. Sutton:  Okay.

The Court:  Then I'll rule on its admissibility.

Ms. Sutton:  Okay.

The Court:  If I rule it's admissible, you can then show it to the Jury.

Ms. Sutton:  I will not be showing any exhibits from this time forward. . . .

Sutton did not ultimately offer the photographic exhibit of the accident location into evidence, and the record does not contain it.[3]

The record reflects that the trial court followed the rules of evidence by sustaining the appellees' objection to Sutton's showing the exhibit until it had been admitted.  *See* Tex. R. Evid. 103; *Perez v. Lopez*, 74 S.W.3d 60, 66 (Tex. App.—El Paso 2002, no pet.) ("To preserve error concerning the exclusion of evidence, the complaining party must actually offer the evidence and secure an

---

[3]After offering herself for cross-examination and at the conclusion of her testimony, Sutton stated, "I have no further witnesses, Your Honor.  So that's my case."  The appellees then moved for an instructed verdict on the reasonable and necessary medical expenses.  When the trial court asked for a response, Sutton stated, "I was frustrated over the fact that I knew that every – I have – look at these – these are all of my exhibits.  I have good exhibits that support my case, and I wasn't allowed – I panicked and I just decided not to do each one of them individually."  Sutton did not ask the trial court to admit these exhibits, and even if she had, the trial court was not required to permit additional evidence after she rested.  *Cf.* Tex. R. Civ. P. 270; *Poag v. Flories*, 317 S.W.3d 820, 828 (Tex. App.—Fort Worth 2010, pet. denied) (stating that in determining whether to grant a motion to reopen, the trial court should consider whether the movant showed due diligence in obtaining the evidence, whether the proferred evidence is decisive, whether the reception of such evidence will cause undue delay, and whether granting the motion will cause an injustice).

adverse ruling from the court."). Sutton then never offered the exhibit itself into evidence, providing the appellees with nothing to object to and providing us with nothing to review. *See* Tex. R. App. P. 33.1; Tex. R. Evid. 103(a)(2).

Finally, Sutton complains that the trial court improperly sustained the appellees' objections to hearsay during her description of the aftermath of the accident. The objections occurred during the following testimony:

> Ms. Sutton: . . . And so I had two people in the car with me. I don't think I'm allowed to talk about them, but I did have two people in the car with me. And they were yelling to me to get back in the car.
>
> Mr. Oldham: I object to anything that the people said unless they're going to testify.
>
> Ms. Sutton: I'm not saying—all right. I got back in the car because I had to move the car out of the street. I waited seven years for this trial, Your Honor, and this is the way Mr. Oldham has been for seven years.
>
> . . . .
>
> Ms. Sutton: . . . So I called my insurance company and told them I had been rear-ended and then asked them what I should do and they said that—
>
> Mr. Oldham: Your Honor, I—I object to what people tell her. It's just hearsay and –
>
> Ms. Sutton: It's not hearsay.
>
> The Court: I'll –
>
> Ms. Sutton: I have personal knowledge.
>
> The Court: I'll sustain the objection as to what someone else told you as being hearsay.

9

> Ms. Sutton: Me calling the insurance company isn't hearsay. I did that.

> The Court: That's exactly correct and he didn't object to you saying you called the insurance company. He objected when you said, they told me. See, you're about to say a statement made by a party that's not here in court to be cross-examined and to testify under oath.

> Ms. Sutton: It's my insurance company though.

> The Court: That's hearsay. It doesn't make any difference who[se] insurance company it is. I have sustained his objection.

The record does not reflect that the trial court ruled on the appellees' first hearsay objection or improperly excluded Sutton's evidence by sustaining their second. *See* Tex. R. Evid. 103; Tex. R. App. P. 33.1; *see also* Tex. R. Evid. 801(d) (defining "hearsay" as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted). We overrule all of Sutton's evidentiary complaints contained within her five issues.

## C. Directed Verdict

A directed verdict is proper only under limited circumstances: (1) when the evidence is insufficient to raise a material fact issue, or (2) when the evidence conclusively establishes the right of the movant to judgment or negates the right of the opponent. *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Farlow v. Harris Methodist Fort Worth Hosp.*, 284 S.W.3d 903, 919 (Tex. App.—Fort Worth 2009, pet. denied). In reviewing a

10

directed verdict, we follow the standards for assessing legal sufficiency of the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005).

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In a directed-verdict review, we review the evidence in the light most favorable to the person suffering the adverse judgment, and we must credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *City of Keller*, 168 S.W.3d at 827; *see also Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011).

In a negligence case, the plaintiff must establish the existence of a duty, a breach of that duty, and damages proximately caused by that breach. *Salinas v. Allen*, 366 S.W.3d 842, 846 (Tex. App.—Amarillo 2012, no pet.) (citing *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005)). The mere fact of injury does not prove compensable pain and mental anguish. *Grant v. Cruz*, 406 S.W.3d 358, 364 (Tex. App.—Dallas 2013, no pet.). Further, a claim for past medical expenses must be supported by evidence that such expenses were reasonable

11

and necessary as a result of the injury. *Whitaker v. Rose*, 218 S.W.3d 216, 223 (Tex. App.—Houston [14th Dist.] 2007, no pet.). A plaintiff can prove reasonableness and necessity of past medical expenses through either expert testimony on the issues of reasonableness and necessity or an affidavit prepared and filed in compliance with civil practice and remedies code section 18.001. *Id.*

Here, Sutton offered nothing into evidence to support her claim for damages for physical injuries caused by the collision other than to state that she had been hurt, even though she had alleged in her petition that she had suffered injuries to her "head, neck, back, shoulders, torso, hips and legs," in addition to physical pain and mental anguish and indebtedness to Medicare. She offered no medical records or receipts for medical treatment into evidence. *Cf. Haddard v. Rios*, No. 13-07-00648-CV, 2012 WL 1142779, at *3 (Tex. App.—Corpus Christi Apr. 5, 2012, pet. denied) (mem. op.) (noting that plaintiff provided legally sufficient evidence to support her award of past medical damages when she offered her medical records and bills into evidence and had chiropractic expert testify on her behalf that her injuries were caused by the vehicle accident); *Byrd v. Delasancha*, 195 S.W.3d 834, 835–38 (Tex. App.—Dallas 2006, no pet.) (reversing directed verdict on causation when plaintiff had testified that she had no injuries before the accident but had them afterward and gave very specific testimony about her accident-related injuries, which were documented in the medical records admitted into evidence); *Pilgrim's Pride Corp. v. Smoak*, 134 S.W.3d 880, 893–94 (Tex. App.—Texarkana 2004, pet. denied) (noting in low-

12

speed car collision case that the jury had the direct testimony of accident witnesses as well as photographs and diagrams of the scene). And she provided neither expert testimony on the issues of reasonableness and necessity for services nor an affidavit prepared and filed in compliance with section 18.001.[4] *See* Tex. Civ. Prac. & Rem. Code Ann. § 18.001(b) (West 2008 & Supp. 2013); *see also id.* § 41.0105 (West 2008) (providing that recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred on behalf of the claimant); *Haygood v. De Escabedo*, 356 S.W.3d 390, 391 (Tex. 2012) (holding that section 41.0105 limits the evidence at trial to expenses the health care provider has a legal right to be paid). Sutton also offered no evidence to support her claim for property damage to her vehicle.[5] Under the

---

[4]We also note that as set out above, although Sutton generally alluded to a car collision, her only direct testimony that Helwig, driving a Shoop's vehicle, had hit her vehicle was, "I asked to talk to Mr. Shoop to tell him that one of his employees had hit me and that he told me he'd take care of everything and I needed to know what to do," that she had told her insurance company that she had been rear-ended, and "I got hit."

In her opening statement, Sutton told the jury that Helwig, driving a Shoop's pickup truck, rammed her so hard that she wound up in the middle of the intersection. However, as the trial judge explained to Sutton before trial began, opening statements are not evidence. *Fort Worth Hotel Ltd. P'ship v. Enserch Corp.*, 977 S.W.2d 746, 756 (Tex. App.—Fort Worth 1998, no pet.) (op. on reh'g); *see also Border Apparel-East, Inc. v. Guadian*, 868 S.W.2d 894, 898 n.6 (Tex. App.—El Paso 1993, no writ) (citing Tex. R. Evid. 603, which requires testimony under oath or affirmation).

[5]Sutton testified that she had purchased her vehicle new in 1989 and that it was in good shape and "didn't have a scratch on it." However, she did not testify about what sort of damage it incurred in the collision other than her driver's seat being dislocated or how much it would cost to repair that damage.

facts in the record here, we conclude that the trial court did not err by granting the appellees' motion for instructed verdict, and we overrule Sutton's complaint. *See Prudential Ins. Co.*, 29 S.W.3d at 77 (stating that a court may instruct a verdict if no evidence of probative force raises a fact issue on the material questions in the suit).

## D. Due Process

After the trial court granted a recess for Sutton to review the law on instructed verdicts, Sutton argued that an instructed verdict was improper for insufficient evidence because she had "presented all of [her] evidence in a complaint that is on file with the Court" and that no one had rebutted her statement that she had been rear-ended and hurt. After the trial judge granted the instructed verdict, Sutton had the following conversation with him:

> Ms. Sutton: Did I make you mad, Your Honor?
>
> The Court: Not at all, why would you think you'd made me mad? I gave you about 30 minutes longer to look at that than I would have given an attorney. Why would you think you made me mad?
>
> Ms. Sutton: Well, because of the fact that you didn't allow me to present—properly present my case.
>
> The Court: Yes, ma'am, I did. I even told you how to admit those photographs in evidence.
>
> Ms. Sutton: Yes.
>
> The Court: And because he had objected, you didn't even try to present them after that. I told you exactly how to proceed with the photographs. I didn't prevent you from presenting anything. I tried to help you see how to present the things.

Ms. Sutton: Yes, sir, I understand that, but you don't understand that I'm sick and adversity upsets me and he played into that.

The Court: Well, I—I have to be an impartial arbiter here and I helped you as much as I could by telling you what you needed to do to get these photographs in evidence. And you just quit. I—I don't know why. I mean, I—I can't be responsible for why. All I can do is what I can do under the circumstances. I owed the Defendant a fair trial also.

Ms. Sutton: Yes, but he didn't even have to present a trial.

While Sutton bases part of her argument on the fact that the defense did not present a case or allow her to cross-examine their witnesses, there is nothing in the rules of civil procedure that requires a defendant to put on evidence after a plaintiff's case. *Cf.* Tex. R. Civ. P. 268 (providing for a motion for directed verdict). To the contrary, the plaintiff has the obligation to present evidence during his or her case in chief to meet the burden of proof on his or her claims. Tex. R. Civ. P. 265(b) (requiring party upon whom rests the burden of proof on the whole case to introduce his evidence). Further, a due process complaint, which requires not only a showing of an interest entitled to procedural due process protection but also a showing of what process is due, must still comply with our rules of preservation of error. *See In re L.M.I.,* 119 S.W.3d 707, 711 (Tex. 2003) (stating that it must be apparent from context that appellant was attempting to raise a due process challenge); *Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 929 (Tex. 1995) (discussing due process). At a

15

minimum, due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Than*, 901 S.W.2d at 930.

In addition to several hearings over the course of the case, Sutton had the opportunity to conduct voir dire and did so, and she had the opportunity to present her case at trial on the elements of negligence. *See id.* It is also clear from the record that during and after trial, the trial judge attempted to give her what guidance he could without prejudicing the other side. *See id.* Therefore, to the extent that Sutton has raised and preserved a due process complaint, based on the record before us and our analysis of the directed verdict set out above, we hold that the trial court did not deprive Sutton of due process, and we overrule her complaint. *See Amrhein v. La Madeleine, Inc.*, No. 06-12-00107-CV, 2013 WL 839227, at *2 (Tex. App.—Texarkana Mar. 6, 2013, pet. stricken) (mem. op.) (describing pro se appellant's brief "as a fifty-page denunciation of perceived slights by the legal system and her belief that because she has not prevailed, the system has treated her unfairly at every turn").

## E. Opening Statement Limitation

Sutton complains that the trial court abused its discretion by limiting both parties' opening statements to five minutes without warning on the morning of trial. As noted by Sutton in her April 29, 2013 letter to this court, which we address below, the record does not reflect any discussion between the trial court and the parties with regard to such a limitation or that Sutton objected to it other than stating to the jury during her opening statement, "I have five minutes to tell

16

you this," and during her own testimony, "I was given a very short time to say something. I didn't say everything."

Nonetheless, assuming both that the trial court had abused its discretion by limiting Sutton's opening statement to five minutes and that Sutton had preserved this complaint on the record for our review,[6] Sutton has not explained how the limitation probably caused rendition of an improper judgment or probably prevented her from properly presenting the case to this court. *See* Tex. R. App. P. 44.1(a); *Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 225 (Tex. 2005); *see also In re Commitment of Camarillo*, No. 09-12-00304-CV, 2013 WL

---

[6]Although Sutton argues that there is no time limitation in the rules of civil procedure and that it would not have taken long for her to present her twenty-one-page opening statement, rule 265 states that "[t]he party upon whom rests the burden of proof on the whole case shall state to the jury *briefly* the nature of his claim or defense and what said party expects to prove and the relief sought." Tex. R. Civ. P. 265(a) (emphasis added). Further, as one of our sister courts has noted,

> Rule 265(a) does not afford counsel the right to detail to the jury the evidence which he intends to offer, nor to read or describe in detail the documents he proposes to offer. The practice of detailing the expected testimony in the opening statement places matters before the jury without the trial court['s] having had an opportunity to determine the admissibility of such matters. We are of the further opinion that such a practice sometimes has the effect of misleading or confusing the jurors as between the expectations of counsel and evidence actually admitted. The proper limitation of the opening statement is a matter necessarily resting in the discretion of the trial court subject to review for abuse of discretion.

*Ranger Ins. Co. v. Rogers*, 530 S.W.2d 162, 170 (Tex. Civ. App.—Austin 1975, writ ref'd n.r.e.) (citations omitted); *see also Guerrero v. Smith*, 864 S.W.2d 797, 800 (Tex. App.—Houston [14th Dist.] 1993, no writ) (stating that the abuse of discretion standard gives trial courts wide latitude in limiting opening statements).

2732662, at *2 (Tex. App.—Beaumont June 13, 2013, no pet.) (mem. op.) (concluding that even if the trial court had improperly restricted appellant's opening statement, appellant did not show harm); *Tacon Mech. Contractors, Inc. v. Grant Sheet Metal, Inc.*, 889 S.W.2d 666, 675 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (overruling complaint regarding restricted opening statement when appellant failed to establish a clear abuse of discretion, failed to preserve its objection, and failed to show harm). We overrule her issues pertaining to the limitation of her opening statement.

## F. Remaining Arguments

Sutton argues that the appellees and the trial court treated her unfairly during the litigation process and complains that the court reporter omitted many of her statements because they would show how prejudiced appellees' counsel and the trial judge were against her. Sutton also contends that the proposed order for directed verdict that the appellees sent to her to approve differed from the one that the trial court signed, that the trial court was hostile to her, that the court reporter "put words in [her] mouth" that she never spoke, and that the appellees' attorney harassed and tried to intimidate her. She further complains that the case unnecessarily dragged on for five years after the appellees had already admitted liability.

We first note that Sutton sent this court an eleven-page letter on April 29, 2013, complaining about "typographical errors, errors of omission, [and] insertion of statements Plaintiff In Pro Se/Appellant does not remember saying or agreeing

18

to" in the reporter's record. In response, this court issued two letters on May 10, 2013. One letter contained our determination that the reporter's record filed on April 19, 2013 did not comply with the Uniform Format Manual for Texas Reporters' Records effective July 1, 2010, and we directed the court reporter to send a corrected original and a corrected copy of the reporter's record to the court on or before May 20, 2013.

In our other May 10, 2013 letter, we noted that Sutton had identified various alleged inaccuracies in the substantive contents of the reporter's record. Pursuant to rule of appellate procedure 34.6(e), we directed the parties to file with this court on or before May 20, 2013: (1) a written, signed stipulation including the agreed-upon text for each alleged inaccuracy that the parties could resolve and (2) for each alleged inaccuracy that could not be resolved by the parties, a statement that no agreement could be reached and a brief argument discussing why that specific, challenged portion of the record is or is not relevant to the resolution of the appeal. *See* Tex. R. App. P. 34.6(e). We specifically stated in the letter, "If the parties cannot agree on whether or how to correct the reporter's record so that the text accurately discloses what occurred in the trial court, then we **may** submit the dispute to the trial court for resolution." *Id.*

On May 14, 2013, the court reporter filed a corrected reporter's record, and on May 17, 2013, the appellees' counsel replied to our directive by stating that he did not see any matters raised by Sutton that pertained to the appeal but that if Sutton advised him of any of the specific points she believed pertained to the

19

appeal on the issues before the court, he would review and comment on them. Sutton did not file any response with this court, and on May 24, 2013, we issued a letter to the parties in which we noted that Sutton had not responded to our directive and stated that "[a]fter reviewing appellees' response, we have determined that no abatement is necessary at this time."

Having provided Sutton with the opportunity to resolve her record-based complaints prior to this case's submission, *see* Tex. R. App. P. 34.6(e)(1)–(3),[7] and having noted no apparent deficiencies in the corrected record that would have affected the outcome despite Sutton's general allegations to the contrary,[8] we will not further address her reporter's record complaints. *See, e.g.*, *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990) (noting, with regard to a partial record case, that "[t]he burden is on the appellant to see that a sufficient record is presented to show error requiring reversal"). We also will not

---

[7]Had Sutton responded to our instructions, we would have abated this appeal to the trial court to determine whether the reporter's record was inaccurate on the items that she and the appellees' counsel could not agree on that were relevant to the appeal's resolution. *See Taylor v. Taylor*, No. 02-05-00435-CV, 2007 WL 2460359, at *7 (Tex. App.—Fort Worth Aug. 31, 2007, pet. denied) (mem. op.) (noting, after having abated appeal and remanded the case to the trial court to determine whether the reporter's record was inaccurate, that appellant merely wanted to change his testimony).

[8]For example, Sutton alleges on appeal that the reporter's record "omitted important happenings," including that she had tripped on the way to the witness stand, that her knee had given way as she left the stand, causing her to drop everything she was carrying, and that she remained close to tears on several occasions. However, she does not explain the relevance of these and her other allegations with regard to the case's ultimate outcome. *See* Tex. R. App. P. 44.1(a).

consider any of the extraneous documents outside of the record that Sutton included in the appendix to her appellate brief. *See* Tex. R. App. P. 34.1 (defining appellate record as the clerk's record and the reporter's record).

In her appellate brief, Sutton complains that the appellees sent her a copy of an order on directed verdict that she received at her post office box on December 14 and then sent a copy modified to add court costs (she does not state on which day her post office box received this order); Sutton states that her post office box received the signed order on December 19 and that she did not receive either the modified copy or the signed order until December 30, 2012. She further complains that adding court costs had not been discussed or brought up with her on the day of trial. However, she also asserts that she "had a complete melt down" after the December 12, 2012 trial and retired to her bed until December 23, when she emerged to go to church, before returning to her bed until December 30. Other than apparently alleging a lack of notice, Sutton does not raise any other complaints with regard to the order on costs, and under the circumstances presented on the face of this record, we cannot say that the trial court abused its discretion by assessing costs against her as the losing party or that any lack of notice harmed her when the trial court's plenary power remained in effect when she received the signed order.[9] *See* Tex. R. Civ. P. 131, 329b.

---

[9]When a party appears pro se, she is held to the same standards as a licensed attorney and must comply with all applicable laws and rules of

Finally, the record does not reflect mistreatment of Sutton by either the appellees or the various trial judges that presided over the case during the five years it remained pending.[10]  To the contrary, Sutton stated to the trial judge that the appellees had offered to settle the case "on many occasions" and had "actually paid for damages in this case," and she frequently received more explanations about rulings than the trial judge was obliged to give.

The record reflects that Sutton did not understand how to litigate a case, how opening statements worked (despite explanation from the trial judge), how or when to offer evidence (despite instructions from the trial judge), or how a motion in limine (as opposed to a trial objection) functioned with regard to evidence at trial (despite the trial judge's efforts to explain).  The record also reflects that in 2009, Sutton twice moved for a continuance of the trial date and that she again moved for a continuance in 2011, all of which the trial court granted, extending the case's duration.  Prior to recessing so that Sutton could research the appellees' motion for instructed verdict, the trial judge attempted to explain to her how that motion worked.  The trial judge also specifically informed

procedure.  *Robb v. Horizon Communities Improvement Ass'n*, No. 08-11-00236-CV, 2013 WL 5352033, at *3 (Tex. App.—El Paso Sept. 25, 2013, no pet.).  If pro se litigants were not required to comply with applicable rules of procedure, they would be given an unfair advantage over parties represented by counsel.  *Id.* Rule of civil procedure 131 provides for the successful party to a suit to "recover of his adversary all costs incurred therein, except where otherwise provided." Tex. R. Civ. P. 131.

[10]Two judges recused themselves over the course of the case.

Sutton, "Wait for [the court reporter] to get on the record. You want everything to be on the record if you're going to have an appeal. She's back on the record. Tell me what you want to say now."

Even if the trial judge had been less helpful to Sutton, however, "[a] trial judge has broad discretion in conducting the proceedings before him." *In re M.J.M.*, 406 S.W.3d 292, 299–300 (Tex. App.—San Antonio 2013, no pet.) (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240–41 (Tex. 2001)). Likewise, judicial rulings alone almost never constitute a valid basis to allege bias or partiality, and "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *In re A.E.A.*, 406 S.W.3d 404, 420 (Tex. App.—Fort Worth 2013, no pet.) (citing *Dow Chem. Co.*, 46 S.W.3d at 240). As we noted in *A.E.A.*, "expressions of impatience, dissatisfaction, annoyance, and even anger do not establish bias or partiality," and a judge's ordinary efforts at courtroom administration—even if they appear stern or short-tempered— usually do not establish bias or partiality. *Id.* at 420–21. Moreover, to preserve a complaint about judicial conduct for review, an objection to the conduct must be made in the trial court at the time the conduct occurs. *M.J.M.*, 406 S.W.3d at 300.

Therefore, even if the record reflected that Sutton had preserved a complaint about any of the trial court's alleged actions over the case's five-year course, we cannot say that its actions constituted an abuse of discretion. And

23

the record does not reflect that Sutton ever sought any recourse against the appellees' counsel under the rules of civil procedure or the civil practice and remedies code for any procedural misbehavior that she perceived over the course of the case. *See* Tex. Civ. Prac. & Rem. Code Ann. § 10.002 (West 2002); Tex. R. Civ. P. 13, 21b, 215.1. Therefore, we overrule the remainder of Sutton's five issues.

## III. Conclusion

Having overruled all of Sutton's issues, we affirm the trial court's judgment.

PER CURIAM

PANEL: MCCOY, J.; LIVINGSTON, C.J.; and DAUPHINOT, J.

DELIVERED: November 14, 2013

24