**AFFIRM; and Opinion Filed July 8, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-11-01634-CV

**MAHALIA GRANT, Appellant**
**V.**
**JOSE MARCISCO CRUZ AND DFW A-1 PALLET, INC., Appellees**

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-09-04023**

## OPINION

Before Justices O'Neill, Francis, and Fillmore
Opinion by Justice Fillmore

Mahalia Grant was stopped at a traffic light behind an 18-wheeler truck driven by Jose Marcisco Cruz when the truck rolled backward and struck the front of Grant's car. Grant sued Cruz and Cruz's employer, DFW A-1 Pallet, Inc., alleging that she was injured in the accident. A jury returned a verdict in favor of Grant, awarding $10,000 for past medical expenses and $700 for loss of earning capacity in the past. The jury, however, awarded zero damages for Grant's past and future physical pain and mental anguish, loss of future earning capacity, past and future physical impairment, and future medical expenses. The trial court rendered judgment on the jury's verdict.

In one issue, Grant argues the evidence is factually insufficient to support the jury's zero damages finding as to Grant's past pain and mental anguish and that when "the jury finds

liability and awards past medicals it should award damages for pain." We affirm the trial court's judgment.

## Background

On April 9, 2007, Cruz's truck was stopped at a traffic light on the service road adjacent to Interstate 20. Grant stopped her car behind the truck. When the light changed, Cruz's truck rolled backward. According to Cruz, this happened when he took his foot off the brake to step on the clutch and that a backward slide of four to eight inches is normal in this circumstance due to the weight of the truck. Grant, however, believed that Cruz put the transmission into reverse, rather than into drive. Cruz's truck hit the front of Grant's car, causing minor damage to the hood and grill. The impact did not cause the airbags in Grant's car to deploy or her seatbelt to lock up. At trial, Grant testified the truck hit her car multiple times, throwing her body back and forth violently. According to Grant, the force was so violent that she could not hold onto the steering wheel. She hit her head on the steering wheel and on the headrest. Grant testified that the truck's bumper eventually came over the hood of her car and she thought that she was going to die. She put her car into reverse and backed away from the truck.

According to Grant, Cruz started to drive away. She got out of her car and waved her hands and yelled to get Cruz's attention. Cruz and Grant pulled their vehicles into a parking lot. Grant admitted that she yelled and cursed at Cruz for hitting her car. Cruz testified that Grant said she was okay and did not appear to be injured. Cruz contacted his supervisor who spoke to Grant on the phone. According to Grant, Cruz's supervisor apologized and indicated he was coming to the scene of the accident.

Grant got back into her car and began calling "anybody who I could think of," including her mother and her mechanic. Grant testified that, while she was in the car, her neck and back "locked up" and she could not move. Her sight started going "in and out" and she started to

"black out." Grant indicated she could talk but could not see anything. She also felt a "weird tingleness" in her legs. Grant requested that an ambulance be called.

Mark Blaylock, a firefighter/paramedic, responded to the call for an ambulance. According to Blaylock, there was only "very minor" damage to Grant's car and he noted twice in his report that Grant was involved in a "very minor" collision. Blaylock testified there was nothing at the scene to suggest that Grant's car had been hit multiple times, and Grant did not tell him that her car had been hit more than once. Grant was conscious and alert and the information in his report came from Grant. Grant complained only about neck and back pain and did not mention any head pain or that she had hit her head, could not see, or had lost consciousness. Further, Blaylock indicated he did not see a mark on Grant's head that would indicate her head had hit anything.

Grant was taken by ambulance to Medical City of Arlington. On the way to the hospital, Blaylock noticed that Grant's eyes were rolling back into her head. He asked Grant what was happening, and she said that she was having a seizure. However, according to Blaylock, none of Grant's vital signs were consistent with her having a seizure, and a person having a seizure is generally unable to answer questions.

Medical City of Arlington's records reflected "cosmetic damage per EMS." However, Grant told hospital personnel that she had been "rammed" by a truck at a traffic light and complained of shoulder and neck pain and a headache. At trial, Grant testified that she thinks she told the hospital that she hit her head, could not see, was going in and out of consciousness, and had a swollen neck. However, hospital personnel did not note these complaints in Grant's medical records. Grant received ibuprofen and was released from the hospital within an hour or two. That same day, Grant went to see Dr. Clinton Battles and told him an 18-wheeler backed into her car and "totaled it out." Battles diagnosed a back strain and prescribed physical therapy

in his office. Grant testified that, after the accident, she was "stiff as a board." According to Grant, a few days after the accident she was standing in the kitchen when she realized she was urinating on herself.

On April 11, 2007, Grant went to the emergency room at Huguley Memorial Hospital. Grant testified she did not return to Medical City of Arlington because the hospital should have conducted tests on her on April 9, 2007, but failed to do so. Huguley's medical records indicate that Grant said an 18-wheeler backed into the front of her car. The hospital records indicate that Grant complained about pain in her shoulders, but denied any other complaints and denied loss of consciousness. A CT scan of Grant's spine did not reveal any cause for her pain. Grant was released from Huguley within a couple of hours.

On April 16, 2007, Grant went to Harris Methodist Memorial Hospital. Grant testified that she did not return to Huguley because she wanted to "get some more opinions." Harris's records indicate Grant told hospital personnel that an 18-wheeler "rolled back onto her car" and she complained of back pain. At trial, Grant testified that her statement meant the 18-wheeler "connected onto my hood of the car" and they could not get the cars apart. CT scans of Grant's spine, abdomen, pelvis, and head taken at Harris did not indicate any cause for Grant's pain. Grant was released from Harris within a few hours.

On May 1, 2007, Grant complained to Battles about neck and back pain, weakness in her legs, and urinary incontinence. Battles recommended that Grant obtain MRI scans of her neck and lower back. The MRI scans done on May 2, 2007 showed no "acute fracture or unstable injury," but showed "mild periligamentous edema . . . surrounding the anterior longitudinal ligament from the base of skull thru C4 indicating posttraumatic, inflammatory, and reparative change."

On May 13, 2007, Grant returned to Harris. Harris's records indicate Grant said an 18-wheeler went back and forth, hitting her car several times and pushing her car back. Grant testified at trial that she did not recall making the statement that her car was pushed back during the accident, but "if the 18-wheeler hit me and backed the car up, or hit it once or multiple times, but when you get to the final story, it hit me." Grant testified at trial that, when she went to Harris on May 13, she was paralyzed from the waist down. Grant was admitted into the hospital. MRI scans of Grant's spine, pelvis, and brain were all "unremarkable." The physicians at Harris were unable to see a clear cause for Grant's symptoms and indicated the "patient may have a psychological component (i.e., hysterical paralysis)." Grant was discharged to Pennsylvania Rehab, a rehabilitation facility in Fort Worth, Texas.

On May 29, 2009, while still being treated at Pennsylvania Rehab, Grant complained of right arm paralysis and right face weakness. She was taken back to Harris. The physician at Harris noted that Grant was "trying to present a facial droop, but I did not see any facial droop." Further, the Harris nurse's notes indicate that, although Grant claimed she could not move her right arm, she was observed moving her right arm when the primary nurse was turned away. MRI scans of Grant's spine were again normal. The physicians at Harris discussed with Grant the need to rule out a psychological cause of the symptoms. Grant was "very resistant" to the idea that her symptoms could have a psychological cause and requested second and third opinions.

After Grant was discharged from Harris, she saw a number of physicians and visited a number of hospitals complaining of pain in her left leg and urinary incontinence. Her description of the accident was not consistent and ultimately included her car being hit several times by the truck and her head hitting the steering wheel several times. Although Grant contended there were numerous mistakes in her medical records, Grant's description to various medical providers

of her symptoms and the treatment she had received was also inconsistent. She had several nerve conduction studies performed as well as numerous MRI scans on her back, brain, and knee. None of the tests indicated there was a physical cause for Grant's leg pain and none of the physicians were able to find a cause for Grant's leg pain. Among the findings of the physicians who examined Grant were that Grant's symptoms were unusual and did not appear to be due to any single organic cause, Grant's pain was out of proportion to the exam, there was no objective basis for Grant's subjective complaints, Grant's symptoms possibly had a psychological basis, and it was necessary to rule out "conversion disorder" versus "malingering."

Dr. Brian Feagins testified that, in his opinion, Grant's urinary incontinence was due to detrusor sphincter dyssynergia. This condition can be caused by multiple sclerosis, spinal cord injury, or a brain injury such as a stroke or a gunshot to the brain. However, it takes time for the condition to develop and he would not expect that it would manifest within a couple of days of any injury. Feagins did not opine that the April 9, 2007 accident caused the detrusor sphincter dyssynergia.

Grant, her mother, and several friends all testified about the difficulties Grant had caring for herself after the accident and about Grant's mental state. Grant also offered medical records from her treatment by a psychologist indicating that she had been diagnosed with depression. Grant testified that her fiancé died in 2007. Grant's medical records also indicate that her fiancé was killed during a robbery and that she lost "three other loved ones" in 2007.

Ten jurors returned a verdict that found appellees' negligence was the sole proximate cause of the accident. In response to a jury question concerning the amount of money that would reasonably compensate Grant for her damages from the accident, the jury awarded zero damages for past and future physical pain and mental anguish, future loss of earning capacity, past and future physical impairment, and future medical expenses. The jury awarded Grant $10,000 for

past medical expenses and $700 for past loss of earning capacity. Grant filed a motion for new trial, arguing the damages found by the jury are "inadequate." The motion for new trial was overruled by operation of law.

## Sufficiency of the Evidence

In her sole issue, Grant contends the evidence is factually insufficient to support the jury's finding of zero damages for her past pain and mental anguish. Grant specifically argues the May 2, 2007 MRI showed swelling at the base of her skull and, since none of the later MRI scans showed the swelling, it was necessarily caused by the automobile accident. Grant contends this objective evidence of injury combined with the "common knowledge of laymen that jerky motions and the impact of a vehicular collision can cause excruciating pain even if the injuries are temporary and relatively minor," was sufficient evidence to support an award of damages for past pain and mental anguish and "[w]hen the jury finds liability and awards past medicals it should award damages for pain."

### Standard of Review

In reviewing a factual sufficiency challenge to an adverse finding on which the party had the burden of proof, we determine whether "the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). We consider all the evidence in the record pertinent to that finding and will set aside the judgment only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *see also Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 775 (Tex. 2003) ("[W]hen only one category of damages is challenged on the basis that the award in that category was zero or was too low, a court should consider only whether the evidence unique to that category is so against the great

weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias."). The jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Golden Eagle Archery, Inc.*, 116 S.W.3d at 761; *see also City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). The jury may believe one witness and disbelieve another and resolves any inconsistencies in any witness's testimony. *City of Keller*, 168 S.W.3d at 819; *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). A reviewing court may not impose its own opinion to the contrary. *City of Keller*, 168 S.W.3d at 819; *Golden Eagle Archery, Inc.*, 116 S.W.3d at 761. Finally, we are mindful the jury in this case was not convinced by a preponderance of the evidence regarding the issue raised in this appeal. *Lanier v. E. Founds., Inc.*, No. 05-11-01257-CV, 2013 WL 2244343, at *6 (Tex. App.—Dallas May 22, 2013, no pet. h.); *see also Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex. 1988).

*Analysis*

The jury generally has great discretion in considering evidence on the issue of damages. *McGalliard*, 722 S.W.2d at 697; *Lanier*, 2013 WL 2244343, at *6. Matters of pain and mental anguish are necessarily speculative, and it is particularly within the jury's province to resolve these matters and determine the amounts attributable thereto. *Lanier*, 2013 WL 2244343, at *6. When there is uncontroverted, objective evidence of an injury and the causation of the injury has been established, appellate courts are more likely to overturn jury findings of no damages for past pain and mental anguish. *Id.* (citing *Blizzard v. Nationwide Mut. Fire Ins. Co.*, 756 S.W.2d 801, 805 (Tex. App.—Dallas 1988, no writ)). However, where the evidence of pain is conflicting, scant, or more subjective than objective, appellate courts are generally more reluctant to determine a jury finding of no damages is contrary to the great weight and preponderance of the evidence. *Id.*; *McGuffin v. Terrell*, 732 S.W.2d 425, 428 (Tex. App.—Fort Worth 1987, no writ) (when there was no objective evidence of injury, jury could resolve

inconsistencies in evidence, determine plaintiff's injuries from accident were minimal, and award no damages for pain and suffering despite awarding damages for past medical expenses).

The mere fact of injury does not prove compensable pain and mental anguish. *Blizzard*, 756 S.W.2d at 805; *see also Lanier*, 2013 WL 2244343, at \*6; *Lamb v. Franklin*, 976 S.W.2d 339, 341–42 (Tex. App.—Amarillo 1998, no pet.). Further, "a damage award for physical pain is not always mandated when medical expenses are awarded." *Enright v. Goodman Distribution, Inc.*, 330 S.W.3d 392, 398 (Tex. App.—Houston [14th Dist.] 2010, no pet.). For an undisputed injury that is less serious and accompanied only by subjective complaints of pain, a jury may reasonably believe that the injured party should be compensated "for seeking enough medical care to ensure that [the] injury was not serious" yet also conclude the injured party "never suffered pain warranting a money award." *Blizzard*, 756 S.W.2d at 805; *see also Enright*, 330 S.W.3d at 398. Further, when there is conflicting evidence of the injury's cause or an alternative explanation for the injured party's reported pain, appellate courts have upheld zero damage findings for physical pain despite the jury finding that the injured party is entitled to damages for medical expenses. *Enright*, 330 S.W.3d at 398; *see also Lanier*, 2013 WL 2244343, at \*7 ("When there is conflicting evidence about the severity of the injuries or about whether the injuries were caused by the collision, the jury has the discretion to resolve the conflicts, determine which version of the evidence to accept, and refuse to award damages."); *Dollison v. Hayes*, 79 S.W.3d 246, 250–52 (Tex. App.—Texarkana 2002, no pet.); *Lamb*, 976 S.W.2d at 342–43 (affirming zero damage finding for pain and suffering despite award of medical expenses; jury heard evidence of alternative causes for soft tissue injury and evidence that plaintiff was "either faking or exaggerating her complaints for financial or other gain").

A jury may disbelieve a witness, even if the witness's testimony is uncontradicted. *Barrajas v. VIA Metro. Transit Auth.*, 945 S.W.2d 207, 209 (Tex. App.—San Antonio 1997, no

writ). A jury is free to reject the subjective testimony of a plaintiff as to the existence, amount, or severity of the plaintiff's pain. *Dollison*, 79 S.W.3d at 252. A jury may also conclude, even when an objective injury is shown, that the injury is attributable to factors other than a defendant's negligence. *McDonald v. Dankworth*, 212 S.W.3d 336, 349 (Tex. App.—Austin 2006, no pet.); *see Barrajas*, 945 S.W.2d at 209–10 (jury may scrutinize medical bills and determine which bills were connected to accident*); Hilland v. Arnold*, 856 S.W.2d 240, 243 (Tex. App.—Texarkana 1993, no writ) (jury had discretion to disbelieve appellant regarding cause of his continuing pain when his testimony was only direct evidence of causation).

Here, the jury awarded Grant damages for her past medical expenses and past lost earning capacity, but refused to award Grant damages for her past pain and mental anguish. Given these findings, it is clear the jury believed Grant suffered some injury as a result of the accident and reasonably sought enough medical care to ensure the injury was not serious. The jury, however, could have also reasonably believed, based on the evidence, that Grant did not suffer any pain or mental anguish due to the accident.

Blaylock's testimony and photographic evidence in the record shows the accident caused only minimal damage to Grant's car. Grant told Cruz after the accident that she was fine and started complaining of pain only after making several telephone calls. On the way to the hospital, Blaylock noted Grant's eyes rolling back into her head, and Grant told him that she was having a seizure. However, Grant's vital signs did not indicate that she was having a seizure and, according to Blaylock, people who are having a seizure are generally unable to respond to questions. The emergency room personnel at Medical City of Arlington released Grant after only a couple of hours.

Over the next few days, Grant sought treatment at both Huguley and Harris, complaining of pain. CT scans performed at those hospitals did not reveal any cause for Grant's reported

pain. Grant had an MRI approximately three weeks after the accident that showed some swelling in her neck. However, there is no evidence this swelling was due to the accident or was the source of any pain. Grant had two more series of MRI scans in May 2007. None of the scans showed any injury that could be the cause of Grant's reported pain. Further, there was evidence that Grant attempted to exaggerate her symptoms.

Grant continued to seek medical care at a number of hospitals and from a number of physicians. Her description to various medical providers of the accident and of the symptoms she purportedly suffered after the accident was not consistent. The numerous CT scans, MRI scans, and other tests performed on Grant did not reveal any cause of Grant's subjective report of pain and no doctor found a physical reason for Grant's reported pain. Rather, multiple doctors stated they could not find a physical reason for the pain and questioned whether the pain had a psychological origin or Grant was "malingering." Finally, although Feagins testified Grant was suffering from urinary incontinence, there was no evidence the incontinence was caused by the accident.

It was the jury's role to determine which witnesses to believe or disbelieve and to resolve any conflicts or inconsistencies in the evidence. The only evidence before the jury concerning Grant's pain was her testimony, and the jury was free to reject Grant's testimony as to the existence or severity of her pain. Given the record before us, we cannot conclude the jury's finding of zero damages for Grant's past pain and mental anguish is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

We resolve Grant's sole issue against her and affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

111634F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MAHALIA GRANT, Appellant

No. 05-11-01634-CV     V.

JOSE MARCISCO CRUZ AND DFW A-1
PALLET, INC., Appellees

On Appeal from the 68th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-09-04023.
Opinion delivered by Justice Fillmore,
Justices O'Neill and Francis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Jose Marcisco Cruz and DFW A-1 Pallet, Inc. recover their costs of this appeal from appellant Mahalia Grant.

Judgment entered this 8th day of July, 2013.

/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE