**Opinion filed August 1, 2019**



## In The

# Eleventh Court of Appeals

_____

## No. 11-17-00219-CV

_____

## LUIS MARTINEZ AND ANNA MARIA MARTINEZ, Appellants

## V.

## JACOB ERIC LEMENSE AND JARED MILLION, INDIVIDUALLY AND D/B/A STRONG TOWER ELECTRIC, Appellees

**On Appeal from the 385th District Court**
**Midland County, Texas**
**Trial Court Cause No. CV 51,197**

### M E M O R A N D U M   O P I N I O N

This appeal challenges a jury verdict awarding Appellants damages for injuries sustained in a motor vehicle accident. Appellants were occupants of a vehicle rear-ended by a pickup driven and owned by Appellees. Following the accident, Appellants brought suit against Appellees seeking damages for past and future pain, suffering and mental anguish, loss of wages and earning capacity, physical impairment, and medical care. The jury found in favor of Appellants and

awarded Appellant Anna Maria Martinez $5,000 for past pain and mental anguish, $10,000 for loss of earning capacity, and $146,425.41 for past medical expenses. The jury awarded Appellant Luis Martinez $5,034 for past medical expenses. However, in three issues, Appellants challenge the factual sufficiency of the jury's verdict, arguing that the award is unreasonably low given Appellants' severe injuries. Because we hold that the evidence supporting the jury's award of damages is not so contrary to the overwhelming weight of the evidence as to make the judgment clearly wrong and manifestly unjust, we affirm the trial court's judgment.

*Background Facts*

Appellants were occupants in a vehicle that was rear-ended by a pickup driven by Appellee Jacob Eric Lemense. Lemense was an employee of Strong Tower Electric, a company owned by Appellee Jared Million. Following the accident, Appellants sued Lemense and Million (individually and d/b/a Strong Tower Electric) for, among other things, negligence and gross negligence and sought damages for injuries allegedly sustained during the accident.

Luis Martinez testified at trial. Luis testified that, while stopped at a stoplight, he heard a "crashing sound" and felt an impact from behind, which pushed his pickup forward. After confirming that neither he nor Anna had any visible injuries, Luis examined the condition of the vehicles. Luis recognized the driver of the other pickup—Luis had noticed him at an earlier stoplight when he appeared to be looking down at his phone. Luis noted that Appellees' pickup was leaking fluid and that the front end was crumpled in. However, Luis's pickup, which was a company pickup, only had minor visible damage with its reinforced steel bumper bent. Because neither Luis nor Anna was complaining about pain at the time, they declined ambulance treatment, and Luis drove Anna home and then continued to work to report that the pickup had been in an accident.

2

Luis further testified that, despite not feeling pain initially, Anna complained to Luis about back pain later that day, and he drove her to the emergency room. Luis explained how Anna's pain grew worse and prevented her from taking part in her normal activities and routines despite numerous attempts at therapy and treatment over the next few months. Luis testified that eventually, after two surgeries, Anna's condition improved somewhat but that she was still physically unable to do many of the activities and chores she did before the accident. Although Luis testified that Anna did not return to work until five or six months after the accident, Luis clarified on cross-examination that Anna only missed work to attend her numerous doctors' appointments.

Likewise, Luis testified that, although he too did not initially feel pain after the accident, he felt pain the following morning. Although, at first, Luis did not believe that the pain was bad enough to see a doctor, Luis eventually sought chiropractic therapy. The pain improved after a few months of treatment; however, Luis testified that he still feels a "little bit of pain."

Anna Maria Martinez also testified at trial. Anna testified that their vehicle was hit fast and hard and estimated that the impact moved their vehicle twenty feet. Like Luis, Anna testified that she had noticed Lemense texting shortly before the accident. Anna explained that, immediately after the accident, she was in shock but declined to go to the hospital; Anna did not feel pain until later that day.

Anna testified that she initially complained about pain in her neck, arm, and lower back. After first receiving treatment from multiple specialists, Anna was eventually referred to Dr. Benjamin Cunningham, an orthopedic surgeon. Because multiple therapies failed to relieve her pain, Dr. Cunningham ultimately determined that Anna required surgery. Anna testified that she ultimately underwent two back surgeries. Anna also testified that, despite her pain, she continued to work as a housekeeper for a hotel throughout the time she was receiving therapy and

undergoing her surgeries. Anna explained that, despite being temporarily on a walker, she actually worked more hours after the accident than she did before. However, both Anna and a coworker, Katherine Warren, testified that Anna's work suffered negatively after the crash. Additionally, although Anna admitted that her condition had improved since the second surgery, Anna testified that she is now unable to do the housekeeping work she did before the accident, is currently out of work, and is often affected by the weather.

Furthermore, Anna also acknowledged that, some years prior to the accident, she had fallen down some stairs and injured her back. However, Anna insisted that therapy and one injection had remedied the injuries stemming from the fall. Although Appellees offered health records on cross-examination suggesting that Anna had previously been injured in another car accident, Anna denied that she had ever been injured in a previous car accident or had suffered previous back pain. Likewise, although medical reports indicated that Anna informed Dr. Cunningham that she had been hit by a vehicle traveling at sixty miles per hour, Anna denied that she had made such a statement.

Dr. Cunningham's video deposition testimony was also presented at trial. Dr. Cunningham testified that he treated both Luis and Anna after the accident. Dr. Cunningham explained that both Anna and Luis had back pain stemming from the accident but that Luis's pain, unlike Anna's, subsided after a few months. Regarding Anna, Dr. Cunningham testified that, due to Anna's persistent pain, he recommended surgery. Although the first surgery initially appeared successful, Anna still complained of pain following the surgery. As a result, Dr. Cunningham ordered an MRI and identified Anna's SI joint (sacroiliac joint) as a possible source of her pain. Dr. Cunningham explained that, because a surgery to fuse the SI joint is incredibly dangerous, he instructed Anna to pursue multiple alternative therapies to try to relieve the pain following the first surgery. However, after the alternative

therapies failed to relieve Anna's pain, he determined that a second surgery to perform a fusion of Anna's SI joint was necessary.

Dr. Cunningham further explained that back pain can result from even minor collisions and that it is impossible to tell when back pain started for a patient other than by what a patient tells you. Although Dr. Cunningham was not aware that Anna had previously received epidural steroid injections for back pain, Dr. Cunningham testified that (1) Anna's injuries, pain, and treatments were the result of this specific crash; (2) all procedures were necessary to treat her pain; and (3) it was not his opinion that Anna was in any way embellishing or intentionally making her symptoms worse.

Lastly, Appellee Lemense testified at trial. Lemense acknowledged that he caused the accident; Lemense agreed that neither Anna nor Luis "did anything wrong." However, Lemense denied that the impact was "jarring." Instead, Lemense testified that he was traveling at roughly twenty or twenty-five miles per hour when he struck Appellants' pickup, shoving it forward "five feet." Because Lemense's pickup struck the ball hitch on Appellants' pickup, Appellants' pickup did not suffer any visible damage, and Luis and Anna drove off shortly after the accident. Conversely, Lemense's pickup suffered front-end damage, including a "busted" radiator, and had to be towed. Although the collision was not violent enough to deploy the pickup's airbags, Lemense testified that he too was suffering from back pain as a result of the accident.

After hearing the evidence, the jury returned a verdict in Appellants' favor by a vote of 10–2. The jury awarded Anna $5,000 for past pain and mental anguish, $10,000 for loss of earning capacity, and $146,425.41 for past medical expenses and awarded Luis $5,034 for past medical expenses. However, the jury declined to award damages to Anna for future pain and mental anguish, past physical impairment, or future physical impairment and declined to award damages to Luis

5

for past or future pain and mental anguish or physical impairment.  This appeal followed.

*Analysis*

In three issues on appeal, Appellants argue that (1) the jury's verdict of zero damages for Anna's physical impairment lacks factual sufficiency because Appellants presented uncontroverted and objective evidence of severe injuries requiring two surgeries and a course of diagnostic treatment that lasted more than two years, (2) the jury's verdict of $5,000 for Anna's physical pain and mental anguish lacks factual sufficiency because Appellants presented uncontroverted and objective evidence of severe injuries, and (3) the jury's verdict of zero damages for Luis's physical impairment lacks factual sufficiency because Appellants presented evidence of damage unique to physical impairment.  Thus, Appellants are arguing that the jury erred by awarding damages less than what Appellants believe were reasonably necessitated.  We disagree.

When a party challenges the factual sufficiency of an adverse finding on an issue on which it had the burden of proof, it must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence.  *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).  We review the evidence in a neutral light and will reverse a finding only if the evidence supporting the finding is so contrary to the overwhelming weight of the evidence as to make the judgment clearly wrong and manifestly unjust.  *Id.*  The factfinder is the sole judge of the witnesses' credibility and may choose to believe one witness over another; a reviewing court may not impose its own opinion to the contrary.  *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

In reviewing the factual sufficiency of a damage award, we consider all the evidence that bears on the challenged category of damages, even if the evidence also relates to another category of damages.  *Id.* at 773.  A jury generally has discretion

6

to award damages within the range of evidence presented at trial so long as a rational basis for the calculation exists. *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002); *First State Bank v. Keilman*, 851 S.W.2d 914, 930 (Tex. App.—Austin 1993, writ denied).

Matters of pain and mental anguish are necessarily speculative, and it is particularly within the jury's province to resolve these matters and decide the amounts attributable thereto. *Grant v. Cruz*, 406 S.W.3d 358, 363 (Tex. App.—Dallas 2013, no pet.). However, the mere fact of injury does not prove compensable pain and mental anguish. *Id.* at 364. Instead, "[e]ven when there is uncontroverted evidence of an injury, a jury may properly deny an award of any damages when the injuries sustained are subjective, such as back and neck soft-tissue injuries." *Gutierrez v. Martinez*, No. 01-07-00363-CV, 2008 WL 5392023, at *6 (Tex. App.—Houston [1st Dist.] Dec. 19, 2008, no pet.) (mem. op.). Likewise, when there is conflicting evidence of the injury's cause or an alternative explanation for the injured party's reported pain, appellate courts have upheld zero damage findings for physical pain despite the jury finding that the injured party is entitled to damages for medical expenses. *Grant*, 406 S.W.3d at 364. Lastly, a jury may choose to disbelieve a witness, even if the testimony is not contradicted. *Id.*

Here, while both Anna and Luis alleged that they suffered pain and injuries as a result of the accident, and although Dr. Cunningham testified that it was his opinion that Appellants' pain was, in fact, a result of the accident, contrary evidence was also presented.

Regarding Luis, although Luis claimed he eventually suffered pain as a result of the accident, Luis also testified that he declined medical attention at the scene of the accident, proceeded to work, and did not feel pain until the following morning. Furthermore, Luis admitted that his pain was not severe enough for him to seek medical treatment until some weeks after the accident. Thus, although the jury

7

awarded Luis damages for his medical expenses, given the gap in time between the accident and the onset of Luis's pain, and considering the evidence examining the severity of Luis's alleged pain and injury, we cannot say that the jury erred in declining to award additional damages for Luis's physical impairment. *See Golden Eagle Archery*, 116 S.W.3d at 761; *Grant*, 406 S.W.3d at 363–64.

Likewise, regarding Anna, although Anna's pain and injuries were significantly more severe than Luis's—as reflected by the jury's larger award to Anna—evidence was also presented that Anna too declined medical treatment at the scene of the accident and did not complain of pain until sometime after the accident. Furthermore, evidence was also presented suggesting that Anna had previously sustained injuries to her back in a fall down some stairs and in a previous car accident. Additionally, conflicting evidence regarding the severity of the accident involved in the present case and the extent to which Anna's injuries impacted her work was also presented. Thus, we cannot say that the jury erred in determining its apportionment of Anna's damages. *See Golden Eagle Archery*, 116 S.W.3d at 761; *Grant*, 406 S.W.3d at 363–64.

Because the jury was free to determine what testimony it found credible at trial, given the conflicting evidence presented, we cannot say that the evidence supporting the jury's determination of Appellants' damages is so contrary to the overwhelming weight of the evidence as to make the judgment clearly wrong and manifestly unjust. *See Golden Eagle Archery*, 116 S.W.3d at 761; *Nguyen v. Lijun Zhang*, No. 01-12-01162-CV, 2014 WL 4112927, at *10 (Tex. App.—Houston [1st Dist.] Aug. 21, 2014, no pet) (mem. op.). Accordingly, we overrule Appellants' three issues.

8

*Conclusion*

We affirm the judgment of the trial court.


KEITH STRETCHER

JUSTICE


August 1, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.