# NO. 12-23-00133-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ALBERT HAMBRICK, APPELLANT* | § | *APPEAL FROM THE 2ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *FOREMOST COUNTY MUTUAL INSURANCE, APPELLEE* | § | *CHEROKEE COUNTY, TEXAS* |

### *OPINION*

Albert Hambrick appeals the trial court's take-nothing judgment following a jury trial. In his sole issue, Hambrick challenges the factual sufficiency of the evidence supporting the jury's findings of zero damages for past pain and mental anguish, future pain and mental anguish, past physical impairment, and future physical impairment. We affirm.

## BACKGROUND

On July 3, 2014, a hit and run driver struck the driver's side door of Hambrick's vehicle. When the accident occurred, Hambrick was insured under an automobile insurance policy, which included uninsured motorist coverage, issued by Appellee, Foremost County Mutual Insurance (Foremost). Hambrick ultimately filed a lawsuit against Foremost, in which he contended that he was injured as a result of the other driver's negligence and sought a declaratory judgment as to the amount he is entitled to recover from Foremost for damages, attorney's fees, interest, and court costs. Alternatively, Hambrick sought to recover "an amount equal to the amount of his legal damages that may be assessed in this suit which have been caused by the negligence of the driver

of the uninsured motor vehicle, not to exceed the available coverage under the uninsured/underinsured motorist provision of Plaintiff's insurance policy[.]"

The case proceeded to a jury trial solely on the issue of the amount of damages, if any, that would fairly and reasonably compensate Hambrick for his alleged (1) past physical pain and mental anguish, (2) future pain and mental anguish, (3) past physical impairment, and (4) future physical impairment resulting from the accident. During opening statements, Hambrick's counsel asserted that the other driver "T-boned" Hambrick's vehicle and argued that the jury should award Hambrick a total of $400,000 ($100,000 for each of the four categories of damages), and Foremost's counsel suggested that Hambrick was exaggerating and argued that he intended "to abuse the system[.]" The parties stipulated that (1) Foremost paid Hambrick "his policy limits on Personal Injury Protection coverage, which included [Hambrick]'s care with Steven Pierce (Pierce Chiropractic)[,] because Foremost believed it to be related to the subject accident[;]" (2) Foremost believes the hit and run driver's negligence proximately caused the accident; and (3) "Foremost believes that Albert Hambrick was injured in the collision." The trial court read said stipulations to the jury.

Hambrick testified that he was raised on his family's farm, and after he reached adulthood and accepted a job working for a company, he continued to work on the farm. After working for different companies, Hambrick started his own barbecue business in 1986 and worked as a caterer. At some point, Hambrick sustained an accidental gunshot wound to his right leg, for which he underwent surgery. Hambrick was also injured when he stepped into a pothole, which caused him to fall and strike his right knee on concrete. Hambrick ultimately improved after these injuries and continued to run his barbecue business.

On the day the accident occurred, Hambrick was running short of briskets and ribs for his business, so he decided to drive to town to obtain more. While Hambrick was sitting at a stop sign, another vehicle made a wide turn, struck the driver's side door of Hambrick's Dodge truck, and left the scene without stopping. Hambrick testified that the other driver "T-boned" his vehicle, and the impact was hard enough that he went into shock for a couple of minutes and then felt pain in his neck, spine, shoulder, and hip. The airbags in Hambrick's vehicle did not deploy, and Hambrick's seatbelt prevented him from hitting the steering wheel. The day after the accident, Hambrick went to the police station and completed a handwritten report regarding the accident. In the report, which was admitted into evidence as an exhibit, Hambrick stated that the hit and run

2

driver "creased" the door of his truck.[1] Hambrick testified that the day after the accident, he had "a lot of pain" in his neck, spine, shoulder, and left hip, and a friend helped him with scheduled catering jobs because he was unable to cut meat. Hambrick did not recall having pain on his left side before the accident.

A few days after the accident, Hambrick visited the emergency room due to pain and numbness, and he received anti-inflammatory medication and was instructed to return if needed.[2] Approximately one week later, Hambrick visited a different emergency room for pain in his neck, shoulder, and hip. The treating physician gave Hambrick stronger medication and instructed him to return if his pain continued. Hambrick agreed that an x-ray report after the accident stated that he had no fractures or dislocations, and his bones and joints were unremarkable. Hambrick testified that when he was told that he might need chiropractic treatment, Foremost paid for his chiropractic care. Hambrick explained that he never reached maximum improvement from chiropractic care, so his chiropractor ultimately referred him to an orthopedic specialist, Dr. James Michaels. Michaels took X-rays, performed nerve tests, and gave Hambrick three steroid injections for neck pain. Hambrick testified that he continues to see Michaels, from whom he receives an injection in his left shoulder and pain medication every two months. Hambrick denied receiving injections in his left shoulder or neck before the crash. Hambrick explained that he is unable to plant crops since the accident, his barbecue business "has been kind of slow" because he lost all of his catering jobs, and he is currently unable to do anything for his business except assemble and sell sandwiches while other people prepare meat.

During cross-examination, Hambrick testified that in May 2012, he submitted an application for social security disability benefits, in which he stated that he stopped working because of knee problems, asbestos-related issues, back problems, and hip pain. When questioned about his disability application, Hambrick testified, "no, I didn't retire in 2012. . . . I don't recall telling them I retired [from] working in 2012." Hambrick explained, "I didn't stop working. I stopped some of my things. I still had my barbecue and my farm work going on." Defense counsel also questioned Hambrick regarding a portion of the disability application entitled "Medical Conditions," which requested a list of all physical and mental conditions that limit the applicant's

---

[1] Photographs showing the damage to Hambrick's vehicle were admitted into evidence as exhibits.

[2] Hambrick's medical records from before and after the accident were admitted into evidence as exhibits.

ability to work. In that section of the application, Hambrick's responses included, among other things, "chronic pain in left hip" and "sciatic nerve."

Defense counsel questioned Hambrick at length regarding the medical visits reflected in his records, both before and after the accident. Hambrick testified that his family doctor and another physician prescribed hydrocodone and a muscle relaxer before the 2014 accident. Hambrick agreed that at medical appointments in 2017, 2018, and 2019, he rated his pain at eight, nine or ten out of ten; however, medical staff noted in the records that he did not appear to be in acute distress and was not grimacing or writhing in pain. Hambrick denied experiencing left hip pain before the accident but admitted that his social security disability application stated that he suffers from chronic left hip pain. Hambrick explained, "I might have wr[itten] the wrong thing down." Hambrick's counsel rested his case at the conclusion of Hambrick's testimony.

The defense called Dr. Carson Fairbanks, who specializes in orthopedic surgery of the spine, to testify via video deposition. Fairbanks explained that the defense hired him "to provide an expert medical opinion regarding [Hambrick's] spinal pathology" after the accident. Fairbanks reviewed medical records and reports, imaging records, and Hambrick's deposition, and after taking a history from Hambrick, he examined him on August 12, 2022. According to Fairbanks, taking a history is important because "it kind of gives an idea of what is old or chronic or what is new or acute." Fairbanks testified that multiple medical records document that Hambrick suffered from neck pain, neck spasms, low back pain, cervical strain, lower extremity pain, left shoulder pain, knee pain, and sciatica (also known as lumbar radiculopathy) before the accident. Hambrick's nerve study (EMG) showed "chronic left C-7 radiculopathy[,]" and Fairbanks explained that "radiculopathy" means "nerve dysfunction[,]" which is often referred to as sciatica. Fairbanks stated that radiculopathy can manifest as numbness, tingling, weakness, and pain that shoots down an arm or leg.

Fairbanks opined that the accident caused Hambrick to suffer a "lumbar and cervical sprain or strain[,]" and he explained that "the treatment for that typically involves about six to eight weeks of either chiropractic care or physical therapy, in addition to anti-inflammatory medications[,] and then people get over that and they go on and live life." Fairbanks also testified, "I see no evidence of traumatic injury to the disc or the nerves or the spinal cord or the joints like the bones in the neck. I see no evidence of pinching of the nerves or stenosis[,] which is a fancy word for narrowing of the spinal canal." According to Fairbanks, Hambrick had "a lumbar sprain and strain type

4

injury, in addition to what we would call 'chronic degenerative age-related changes within the spine' that all of us experience just from being on a planet with gravity." Fairbanks also explained that Hambrick's 2016 MRI showed "chronic age-related degeneration in the spine that all of us experience" but did not show an acute injury.

Fairbanks testified that Hambrick's visit to the emergency room on July 8, 2014, is attributable to the accident, "[b]ut any emergency room visits that occurred after that, I would find to not be related to this incident. . . . [M]any of them were for other complaints that didn't have anything to do with the accident. In addition, . . . given the low velocity of the accident and no identifiable traumatic injuries, . . . those . . . would not be related" to the accident. Fairbanks explained that Hambrick received treatment at Pierce Chiropractic approximately eighty-five times from November 2014 to sometime in 2016, when his chiropractor referred him to Michaels, and he opined that the chiropractic treatments Hambrick received more than six to eight weeks after the accident were unrelated to the accident. Fairbanks testified that the MRI Michaels ordered showed chronic C-7 radiculopathy, as well as "chronic age-related degenerative changes in the cervical spine with no acute injury." According to Fairbanks, Hambrick's carpal tunnel and cubital tunnel syndrome were "not related at all" to the accident; rather, they "are very common degenerative findings or age-related findings[]" and "can also be related to the type of work that people do, specifically people that work with their hands a lot[.]" Fairbanks explained that Hambrick's diagnoses of chronic pain syndrome, chronic neck pain with cervical radiculopathy at C-7, chronic left shoulder pain, knee pain, left shoulder impingement, hip bursitis, and bilateral carpal tunnel syndrome are "due to chronic degenerative changes and not acute changes or injury that occurred" as a result of the accident. Fairbanks agreed that with the exception of Hambrick's initial emergency room visit and initial chiropractic treatment, the remainder of Hambrick's treatment was necessitated by degenerative changes and chronic conditions rather than injuries sustained in the accident. Fairbanks opined that Hambrick "has a multitude of chronic age-related degenerative changes that may very well need medical attention in the future[,] but . . . none of those are related to the vehicle accident in question."[3]

The jury's verdict awarded zero damages to Hambrick as to each of the following categories: (1) physical pain and mental anguish sustained in the past, (2) physical pain and mental

---

[3] After Fairbanks testified, a video of his evaluation of Hambrick was played for the jury.

anguish that, in reasonable probability, Hambrick will sustain in the future, (3) physical impairment Hambrick sustained in the past, and (4) physical impairment that, in reasonable probability, Hambrick will sustain in the future. The trial court signed a take-nothing judgment in accordance with the verdict, and Hambrick filed a motion for new trial, which the trial court denied. This appeal followed.

## FACTUAL SUFFICIENCY OF THE EVIDENCE

In his sole issue, Hambrick challenges the factual sufficiency of the evidence supporting the trial court's take-nothing judgment. Specifically, Hambrick argues that the parties stipulated that he was injured in the crash, yet the jury's verdict and the trial court's judgment "implies that [he] was not injured in the crash," and the only question before the jury was the amount of money that "would compensate [him] for the injuries that all [p]arties believe he sustained in the crash." Hambrick asserts that each of the findings of zero damages is against the great weight and preponderance of the evidence because the uncontroverted evidence shows objective injuries. In response, Foremost contends that the verdict is not against the great weight and preponderance of the evidence and argues that Hambrick's argument implicitly asks this Court to invoke the now-disfavored zero damages rule, which "provides that when there is objective evidence of an injury, a jury's failure to award some monetary amount for each element of damages proved is *per se* against the great weight and preponderance of the evidence."

## Standard of Review and Applicable Law

In reviewing the factual sufficiency of the evidence, we weigh all the evidence, and we will set aside the judgment only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *City of Keller v. Wilson*, 168 S.W.3d 802, 826 (Tex. 2005); *see also Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Thus, to prevail on a challenge to the factual sufficiency of the evidence supporting an adverse finding on which the complaining party has the burden of proof, the complaining party must show that the adverse finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). If an appellate court concludes that the evidence was factually insufficient, it should "detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates

6

bias." ***Pool v. Ford Motor Co.***, 715 S.W.2d 629, 635 (Tex. 1986). When reversing on factual insufficiency grounds, an appellate court should state in its opinion "in what regard the contrary evidence greatly outweighs the evidence in support of the verdict." ***Id***. In conducting a factual sufficiency review, an appellate court must not merely substitute its judgment for that of the jury. ***Id***. at 634.

The jury is the sole judge of the credibility of the witnesses and the weight to afford their testimony. ***City of Keller,*** 168 S.W.3d at 819. When presented with conflicting testimony, the jury may believe one witness and disbelieve others, and it may resolve inconsistencies in the testimony of a witness. ***Id***. at 819-20; ***McGalliard v. Kuhlmann***, 722 S.W.2d 694, 697 (Tex. 1986); *see also* ***Golden Eagle Archery, Inc. v. Jackson***, 116 S.W.3d 757, 761 (Tex. 2003). If a plaintiff has a history of preexisting injuries or chronic pain but claims that the defendant's negligence caused his injuries, "it is the jury's role to resolve the conflicting evidence on whether the injuries or the physical pain are attributable to sources other than the event made the basis of the suit." ***Parker v. RAD Trucking, LTD.***, No. 04-22-00656-CV, ___ S.W.3d ___, 2024 WL 590442, at *3 (Tex. App.—San Antonio Feb. 14, 2024, no pet. h.) (not yet released for publication). A jury may disbelieve a witness, even if the witness's testimony is uncontradicted. ***Grant v. Cruz***, 406 S.W.3d 358, 364 (Tex. App.—Dallas 2013, no pet.).

**Analysis**

"The premise underlying the [zero damages] rule – that a plaintiff should be compensated for all damages that he or she has adequately proved – is, of course, sound. It is the substitution of this rule for the principles of evidentiary review that is problematic." Raul A. Gonzalez and Rob Gilbreath, *Appellate Review of a Jury's finding of "Zero Damages"*, 54 TEX. B. J. 418 (May 1991). "The zero damages rule was created before ***Pool*** and is inconsistent with that decision because it circumvents the requirement that, in order to reach the conclusion that the jury's finding is against the great weight and preponderance of the evidence, the court must expressly determine that the finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias." ***Id***. at 420 (footnote omitted). "The evidence must do more than establish a threshold level of proof that the plaintiff experienced an element of damages; it must establish that element of damages so thoroughly that it would be manifestly unjust to tolerate the award of $0." ***Id***. (footnote omitted). The zero damages rule eventually became intertwined with the following guideline set forth in a concurring opinion: if the plaintiff has objective symptoms of injury, the jury cannot disregard his

evidence, but if his complaints are subjective and incapable of being directly proven, the jury may award zero damages. *Id*. (citing **Dupree v. Blackmon**, 481 S.W.2d 216, 221 (Tex. Civ. App.—Beaumont 1972, writ ref'd n.r.e.) (Keith, J., concurring)). However, "the proper analysis for a court of appeals, whether the plaintiff's complaint is objective or subjective, is to weigh all of the evidence, detailing it in the opinion, and to determine whether the jury's finding is so contrary to the evidence as to be manifestly unjust." *Id*. (footnote omitted).

In the wake of the aforementioned criticisms of the zero damages rule articulated by then-sitting Texas Supreme Court Justice Raul A. Gonzalez and Rob Gilbreath, many intermediate appellate courts, including this Court, criticized the zero damages rule and rejected strict application of the rule. **Water Doctors Int'l, Inc. v. Lux**, 957 S.W.2d 869, 870 n.1 (Tex. App.—Tyler 1997, no pet.) (citing article by R. Gonzalez and R. Gilbreath and expressly declining to follow zero damages rule because it is inconsistent with **Pool**); *see* **McDonald v. Dankworth**, 212 S.W.3d 336, 349 (Tex. App.—Austin 2006, no pet.); **Gonzalez v. Wal-Mart Stores, Inc.**, 143 S.W.3d 118, 124 (Tex. App.—San Antonio 2004, no pet.); **Dunn v. Bank-Tec S.**, 134 S.W.3d 315, 325-26 (Tex. App.—Amarillo 2003, no pet.); **Perez v. Lopez**, 74 S.W.3d 60, 65-66 (Tex. App.—El Paso 2002, no pet.); **Waltrip v. Bilbon Corp.**, 38 S.W.3d 873, 880 n.2 (Tex. App.—Beaumont 2001, pet. denied); **Morse v. Delgado**, 975 S.W.2d 378, 381, 386 (Tex. App.—Waco 1998, no pet.); **Pilkington v. Kornell**, 822 S.W.2d 223, 225-26 (Tex. App.—Dallas 1991, writ denied); *see also* **In re Orren**, 533 S.W.3d 926, 929-31 (Tex. App.—Tyler 2017, orig. proceeding) (concluding that trial court abused its discretion by granting motion for new trial after zero damages verdict for pain and mental anguish when trial court recited zero damages rule as its reason for doing so, which is "contrary to Texas law"). Although it appears that the Texas Supreme Court has not explicitly rejected the zero damages rule, the Court held in **Golden Eagle** that the proper factual sufficiency standard of review is whether the jury's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias. **Golden Eagle**, 116 S.W.3d at 775. The Court held that "in reviewing a jury's failure to award any damages, courts of appeals should apply the principles articulated in **Pool v. Ford Motor Co.**" **Id.** (footnote omitted). In a concurring opinion, Justice O'Neill asserted that the Texas Supreme Court should "expressly disavow" the zero damages rule because it is inconsistent with the standard of review set forth in **Pool**. **Id.** at 777 (O'Neill, J., concurring). We reaffirm this Court's rejection of the zero damages rule and hold that regardless of whether an

injury is objective or subjective, we review the factual sufficiency of the evidence by weighing all of the evidence and determining whether the jury's finding of zero damages is so contrary to the evidence as to be manifestly unjust. *See City of Keller*, 168 S.W.3d at 826; *Dow Chem. Co.*, 46 S.W.3d at 242; *Pool*, 715 S.W.2d at 635; *Cain*, 709 S.W.2d at 176; *see also Golden Eagle*, 116 S.W.3d at 775; *Lux*, 957 S.W.2d at 870 n.1.

Hambrick argues that because the parties stipulated that he was injured in the accident and he testified regarding his pain and impairment, the only permissible conclusion is that he experienced some compensable pain and impairment. We disagree. "The mere fact of injury does not prove compensable pain and mental anguish." *Grant*, 406 S.W.3d at 364; *see Dollison v. Hayes*, 79 S.W.3d 246, 253 (Tex. App.—Texarkana 2002, no pet.); *Blizzard v. Nationwide Mut. Fire Ins. Co.*, 756 S.W.2d 801, 805 (Tex. App.—Dallas 1988, no writ). "Examples of serious, objective injuries that will support an award of damages for subjective complaints of pain include bone fractures, severe burns, and lacerations." *Enright v. Goodman Distribution, Inc.*, 330 S.W.3d 392, 398 (Tex. App.—Houston [14th Dist.] 2010, no pet.). When the evidence of pain is conflicting, scant, or more subjective than objective, appellate courts are generally reluctant to determine that a jury's finding of zero damages is contrary to the great weight and preponderance of the evidence. *In re Orren*, 533 S.W.3d at 930 (citing *Grant*, 406 S.W.3d at 363-364). "For an undisputed injury that is less serious and accompanied only by subjective complaints of pain, a jury may reasonably believe that the injured party should be compensated 'for seeking enough medical care to ensure that [the] injury was not serious' yet also conclude the injured party 'never suffered pain warranting a money award.'" *Grant*, 406 S.W.2d at 364 (quoting *Blizzard*, 75 S.W.2d at 805).

"Pain and suffering and mental anguish are separate elements of damage for which the plaintiff bears the burden not only of production, but also of persuasion." *Dollison*, 79 S.W.3d at 250-251. "The mental processes by which a jury determines the amount of damages is ordinarily incognizable by an appellate court." *Walker v. Ricks*, 101 S.W.3d 740, 749-50 (Tex. App.—Corpus Christi 2003, no pet.). Determining the dollar value of a plaintiff's pain and suffering is peculiarly within the jury's discretion. *Id.* at 750. The jury is free to reject a plaintiff's testimony regarding the existence, amount, or severity of his pain. *Dollison*, 79 S.W.3d at 252. Even when there is uncontroverted evidence that the plaintiff sustained some injury, a jury may properly find zero damages "when the injuries sustained are subjective, such as back and neck soft-tissue

injuries." ***Gutierrez v. Martinez***, No. 01-07-00363-CV, 2008 WL 5392023, at *6 (Tex. App.—Houston [1st Dist.] Dec. 19, 2008, no pet.) (mem. op.) (upholding an award of zero damages and denying motion for new trial when defendant did not contest liability).

When there is conflicting evidence of the cause of an injury or an alternative explanation for the injured party's reported pain, appellate courts have upheld findings of zero damages for physical pain despite a jury's finding that the injured party is entitled to damages for medical expenses. ***Grant***, 406 S.W.3d at 364; *see also* ***Parker***, 2024 WL 590442, at *1, *8 (upholding verdict of zero damages for past or future physical pain and mental anguish, past or future physical impairment, and future medical expenses despite jury's award of $157,540.24 for past medical expenses when there was conflicting evidence regarding cause of injury); ***Lanier v. E. Founds., Inc.***, 401 S.W.3d 445, 456 (Tex. App.—Dallas 2013, no pet.) (upholding finding of zero damages for future pain, mental anguish, medical expenses, physical impairment, and loss of earning capacity when physician testified that objective medical tests did not reveal "any acute or gross injury or trauma" from accident, but instead "indisputably showed" that plaintiff had preexisting degenerative, arthritic condition of his cervical spine that was not caused by accident); ***Enright***, 330 S.W.3d at 398, 400-01 (upholding verdict of zero damages for past pain when physician testified that plaintiff is "a malingerer" because, despite evidence of post-accident bruising, jury was entitled to conclude that accident did not cause or aggravate plaintiff's back problems or necessitate surgery); ***Hyler v. Boytor***, 823 S.W.2d 425, 427-28 (Tex. App.—Houston [1st Dist.] 1992, no writ) (upholding finding of zero damages for pain and suffering despite award for medical expenses when jury heard evidence of alternative causes for plaintiff's lumbar sprain and spinal injury). "Evidence that subjective pain complaints are motivated by interests other than obtaining treatment for legitimate injuries will support a jury's decision to award zero damages for physical pain." ***Enright***, 330 S.W.3d at 402. Although appellate courts are more likely to overturn jury findings of zero damages for past pain and mental anguish when there is uncontroverted, objective evidence of an injury and causation is established, "'more likely' does not necessarily mean 'must.'" ***Stone v. Christiansen***, No. 02-22-00450-CV, 2023 WL 5766076, at *3 (Tex. App.—Fort Worth Sept. 7, 2023, no pet.) (mem. op.).

Although the parties stipulated that (1) Hambrick was injured in the accident, (2) the other driver's negligence proximately caused the accident, and (3) Foremost paid for Hambrick's chiropractic care because it believed it was "related to the subject accident[,]" the parties did not

stipulate regarding the nature or extent of Hambrick's injuries, and they did not stipulate that Hambrick suffered compensable damages. Hambrick's accident report, in which he stated that the other driver "creased" the door of his vehicle, was in evidence, as were photographs that showed relatively minor damage to the door of his vehicle. The jury also heard Hambrick's testimony that the accident was a "T-bone" collision. Moreover, the jury heard evidence that before the accident occurred, Hambrick suffered from sciatica and chronic pain in his neck, low back, cervical area, lower extremities, left shoulder, hip, and right knee, for which he took hydrocodone. Additionally, the evidence reflected that objective medical tests performed after the accident, including an X-ray, an MRI, and an EMG, showed that Hambrick had chronic and degenerative conditions, but did not show evidence of acute injuries.

The jury also heard evidence that Hambrick attempted to obtain social security disability benefits over two years before the accident occurred, and his complaints at that time included hip pain and back problems. Additionally, Hambrick testified that he continued to work on his farm and barbecue business after stating on his disability application that he could no longer work. The jury further heard Fairbanks testify that as a result of the accident, Hambrick suffered from a cervical and lumbar sprain, for which approximately six to eight weeks of anti-inflammatory medication and chiropractic care are appropriate, but any treatment Hambrick received more than six to eight weeks after the accident was not related to the accident. The parties' stipulation informed the jury that Foremost paid for Hambrick's chiropractic care to the limits of his personal injury protection coverage after the accident. Although Hambrick testified regarding his pain, mental anguish, and impairment, and his medical records were admitted into evidence, no expert witness testified that Hambrick's injury from the accident caused any subsequent pain, mental anguish, and impairment or necessitated all of his post-accident medical and chiropractic treatments. Moreover, during defense counsel's cross-examination of Hambrick regarding his medical records, the jury heard evidence that medical staff noted at various visits that Hambrick's subjective complaints of significant, severe pain (*i.e.* pain that he rated at level eight, nine, or ten out of ten) were inconsistent with his appearance and affect during those medical visits, and said medical records were also admitted into evidence.

Based upon the evidence, the jury could reasonably conclude that although the parties stipulated that the accident injured Hambrick, he did not suffer compensable pain, mental anguish, or physical impairment as a result of the accident. *See Grant*, 406 S.W.3d at 363-64; *Dollison*, 79

S.W.3d at 251-53; *Gutierrez,* 2008 WL 5392023, at \*6; *Blizzard*, 756 S.W.2d at 805. The jury also could reasonably believe that Hambrick's past and future pain, mental anguish, and impairment were caused by chronic or degenerative conditions rather than the injury he sustained in the accident. *See Parker*, 2024 WL 590442, at \*3, \*8; *Grant*, 406 S.W.3d at 364; *Enright*, 330 S.W.3d at 398, 400-01; *Lanier*, 401 S.W.3d at 456; *Hyler*, 823 S.W.2d at 427-28. Furthermore, the jury could reasonably conclude that Hambrick exaggerated the severity of his pain, mental anguish, and impairment. *See Enright*, 330 S.W.3d at 402. It was the jury's role to determine which witnesses to believe or disbelieve and to resolve any conflicts or inconsistencies in the evidence. *See City of Keller,* 168 S.W.3d at 819-20; *McGalliard*, 722 S.W.2d at 697; *Parker*, 2024 WL 590442, at \*3; *Grant*, 406 S.W.3d at 364; *see also Golden Eagle*, 116 S.W.3d at 761.

On this record, we conclude that the jury's findings of zero damages for past pain and mental anguish, future pain and mental anguish, past physical impairment, and future physical impairment are not so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See City of Keller*, 168 S.W.3d at 826; *Dow Chem. Co.*, 46 S.W.3d at 242; *Pool*, 715 S.W.2d at 635; *Cain*, 709 S.W.2d at 176; *see also Golden Eagle*, 116 S.W.3d at 775. Furthermore, the jury's findings do not shock the conscience or clearly demonstrate bias. *See Pool*, 715 S.W.2d at 635. Accordingly, we overrule issue one.

## DISPOSITION

Having overruled Hambrick's sole issue, we *affirm* the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered April 17, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

12



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 17, 2024**

**NO. 12-23-00133-CV**

**ALBERT HAMBRICK,**
Appellant
V.
**FOREMOST COUNTY MUTUAL INSURANCE,**
Appellee

---

Appeal from the 2nd District Court

of Cherokee County, Texas (Tr.Ct.No. 2020-11-0357)

---

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellant, Albert Hambrick, for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*