# NO. 12-23-00309-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOANNA WEI,*<br>*APPELLANT* | § | *APPEAL FROM THE 159TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *LUFKIN ROYALE NAIL SPA 75901,*<br>*LLC D/B/A ROYALE NAIL SPA,*<br>*APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Joanna Wei appeals the judgment rendered after a jury trial in her negligence suit against Lufkin Royale Nail Spa 75901, LLC, d/b/a Royale Nail Spa.  In a single issue, she challenges the trial court's denial of her motion for new trial.  We affirm.

## BACKGROUND

On May 6, 2019, Joanna answered an advertisement for a nail technician position at Royale Nail Spa (Royale), located in Lufkin, Texas.[1]  The owner of Royale, Xuan Hill, asked Joanna to come in the next day so that Hill could evaluate her skills.  As instructed, Joanna arrived at Royale at approximately 8:45 a.m. the following morning.  Hill was not present, but Joanna spoke to her son, Robinson Nguyen, who instructed her to go to the back of the salon, because Hill always arrived through the back door.  Joanna began walking toward a table in a break area, where she intended to wait for Hill; however, before reaching the table, she slipped in a puddle of water on the floor and fell onto her backside.  An employee of Royale assisted Joanna in rising and helped her to a chair.  Thereafter, Joanna informed Nguyen that she slipped

---

[1] Joanna Wei and Ming Wei (a witness in this matter) share a surname.  For the sake of clarity, we refer to them by first name herein.

in water on the floor. Nguyen asked her whether she could still work that day; she responded that she could do manicures even though her leg hurt, because her hands were not injured. Hill arrived at the salon about thirty minutes after Joanna's fall and asked whether she could continue to work, to which she gave the same response. Throughout the day, Joanna provided manicures for approximately six customers but was unable to perform a pedicure because she could not sit on a short stool.

Around 6:00 p.m., she informed Nguyen and Hill that she wanted to leave because of increasing leg pain. When they asked whether she could return the next day, Joanna replied that she was uncertain whether she would need to seek medical attention. Nguyen assisted Joanna in walking to her car, while Hill carried Joanna's bag of manicure tools. Joanna drove the fifty-five minutes to her home using only her uninjured right leg, and went immediately to bed. During the night, she awoke in severe pain and unable to move the injured leg, so she called a friend to take her to the emergency room. Following an x-ray, hospital personnel informed Joanna that her hip was broken and she would be transferred to a hospital in The Woodlands for necessary surgery. On May 9, Dr. Jason Brannen, an orthopedic surgeon, performed the surgery to repair Joanna's hip. She remained in the hospital for one or two more days, after which hospital staff ensured that she could walk with the aid of a walker before discharging her. She attended three physical therapy sessions following the surgery, but stopped therapy because it caused pain.

Joanna filed suit against Royale for negligence related to the slip and fall incident. At the jury trial, Joanna testified to her version of events as set forth above. Additionally, she stated that her pain began improving seven or eight months post-surgery, but at the time of trial, she still experienced pain and numbness in her hip.

Hill testified that she did not recall either speaking with Joanna about the nail technician position or asking her to come to Royale for an interview. Instead, she went to the salon between 9:00 a.m. and 10:00 a.m. on the morning of May 7 because someone called and told her an employee fell. When Hill arrived at Royale, she encountered Joanna standing upright in the front of the salon. When Hill asked what happened and whether she was hurt, Joanna responded that she fell near a hot towel steamer in the back of the salon. Hill subsequently left the salon but returned to Royale around 5:30 or 6:00 p.m. the same day, at which time Joanna asked to leave because of her pain. Hill denied that she or Nguyen helped Joanna to her car and denied having any further contact with her.

Nguyen testified that he arrived at Royale at approximately 8:50 a.m. on May 7, and recalled only one customer waiting outside for an appointment at that time. He realized that the salon did not have enough cash for the day and left for the bank at around 9:05 a.m. Nguyen did not recall seeing or speaking to Joanna before leaving. While at the bank, he received a call from Hill, informing him that someone fell in the salon. When Nguyen returned to Royale, Hill was already present, and Joanna was seated in the employee break area. Nguyen asked multiple times whether she required medical attention, and each time Joanna denied needing a doctor. He then asked Joanna if she could still work, which she affirmed. Nguyen recalled that Joanna performed three manicures that day, asked to leave around 5:00 p.m. because of pain, and required assistance from himself and Hill to reach her car. Joanna returned to the salon before noon the next day and informed Nguyen that her hip was broken and required surgery. Nguyen had no contact with Joanna thereafter.

Dr. Brannen testified by video deposition that on May 8, he received and reviewed X-ray images of Joanna's left hip and diagnosed a femoral neck fracture. He recommended a "closed reduction and percutaneous pinning with cannulated screws," also known as "cannulated screw fixation," which he described as a procedure wherein screws are inserted into the femoral head to stabilize the bone and permit healing. Dr. Brannen noted that in many cases of bone fractures, a patient could feasibly refuse surgery, but the importance of the femoral neck in allowing ambulation made surgery necessary in Joanna's case. He additionally testified that a ground-level fall could "definitely" cause this type of injury, and that such falls are the most common cause of femoral neck fractures. Dr. Brannen affirmed that Joanna did not see him for any follow-up appointments despite attempts by his office staff to contact her, which limited his ability to provide any post-surgery prognosis. However, Joanna's hospital medical records stated that the day after surgery, she walked 150 feet with the aid of a walker.

Finally, Joanna's ex-husband Ming Wei testified that he saw her approximately one week after the surgery, at which time she was using a walker. He moved back into Joanna's house to provide help while she recovered but moved to California in the summer of 2022. He stated that following her injury, she could not cook, clean, shop, or perform yard work, so he performed those tasks. He further testified that Joanna's pain prevented her from working in a nail salon, sitting in a car for a long time, or sleeping well, and that these symptoms were unabated when he moved out.

The jury unanimously found that both Joanna and Royale were negligent, and each was 50% responsible for causing the incident. The jury awarded Joanna damages as follows: (1) $832.00 for physical pain sustained in the past; (2) $0.00 for physical pain that, in reasonable probability, she would sustain in the future; (3) $0.00 for mental anguish sustained in the past; (4) $0.00 for mental anguish that, in reasonable probability, she would sustain in the future; (5) $832.00 for physical impairment sustained in the past; (6) $0.00 for physical impairment that, in reasonable probability, she would sustain in the future; (7) $0.00 for disfigurement sustained in the past; (8) $0.00 for disfigurement that, in reasonable probability, she would sustain in the future; and (9) $9,795.47 for medical care expenses incurred in the past.

Subsequently, the trial court signed a judgment reflecting the jury's findings. Joanna timely filed a motion for new trial, which was overruled by operation of law. This appeal followed.

## MOTION FOR NEW TRIAL

In her sole issue, Joanna contends that the trial court erred by denying her motion for new trial because the jury's answers to Jury Question 3, subparts one through eight, were against the great weight and preponderance of the evidence.

### Standard of Review

We review a trial court's denial of a motion for new trial for abuse of discretion. *Ashworth v. Brzoska*, 274 S.W.3d 324, 328 (Tex. App.–Houston [14th Dist.] 2008, no pet.). A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner or without reference to any guiding rules and principles. *See Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). The substance of the attack levied by Joanna is one of factual sufficiency, which is not an independent ground for reversal in the abuse of discretion analysis. *See, e.g., Gonzales as Next Friend of Gonzales v. 3 Atoms, LLC*, No. 07-19-00437-CV, 2020 WL 1966290, at *3 (Tex. App.—Amarillo Apr. 23, 2020, no pet.) (mem. op.). Rather, it is a component of the overall analysis. *Id.* That is, whether the evidence is factually sufficient influences whether the trial court abused its discretion.

When a party attacks the factual sufficiency of an adverse finding for which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242

4

(Tex. 2001) (per curiam).  We may not substitute our own judgment for that of the trier of fact, pass upon the credibility of the witnesses, or decide how much weight should be given to their testimony.  *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998); *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).  When presented with conflicting testimony, the jury may believe one witness and disbelieve others, and it may resolve inconsistencies in the testimony of a witness.  *City of Keller*, 168 S.W.3d at 819-20; *see also Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *Hambrick v. Foremost Cnty. Mut. Ins.*, No. 12-23-00133-CV, 2024 WL 1661254, at *7 (Tex. App.—Tyler Apr. 17, 2024, no pet. h.) (not yet released for publication).  A jury may disbelieve a witness, even if the witness's testimony is uncontradicted.  *Grant v. Cruz*, 406 S.W.3d 358, 364 (Tex. App.—Dallas 2013, no pet.).

Because none of the parties challenge the wording of the jury questions at issue or accompanying instructions in this case, we will measure sufficiency of the evidence against the questions as submitted.  *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000); *Texas First Nat'l Bank v. Ng*, 167 S.W.3d 842, 855–56 (Tex. App.—Houston [14th Dist.] 2005, pet. granted, judgm't vacated w.r.m.).  As a general principle, we remain mindful that the amount of damages awarded is uniquely within the jury's discretion.  *Mo. Pac. RR Co. v. Roberson*, 25 S.W.3d 251, 257 (Tex. App.—Beaumont 2000, no pet.).

The Texas Supreme Court sets out the factual sufficiency standard of review for cases where a plaintiff challenges a damages award, or a portion thereof, as inadequate:

> [W]hen only one category of damages is challenged on the basis that the award in that category was zero or was too low, a court should consider only whether the evidence unique to that category is so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias.  When … the jury's failure to find greater damages in more than one overlapping category is challenged, the court of appeals should first determine if the evidence unique to each category is factually sufficient.  If it is not, the court of appeals should then consider all the overlapping evidence, together with the evidence unique to each category, to determine if the total amount awarded in the overlapping categories is factually sufficient.

*Golden Eagle Archery*, 116 S.W.3d at 775.


## Past Physical Pain

No fixed rule exists for measuring damages for physical pain, mental anguish, or physical impairment; each case must be measured by its own facts, and appellate courts give considerable

discretion and latitude to the jury's award. *SunBridge Healthcare Corp. v. Penny*, 160 S.W.3d 230, 247 (Tex. App.–Texarkana 2005, no pet.). "While physical injuries are often accompanied by pain, anguish, and impairment, 'the fact of an injury does not prove compensable pain and suffering or impairment.'" *Gainsco Cnty. Mut. Ins. Co. v. Martinez*, 27 S.W.3d 97, 103 (Tex. App.—San Antonio 2000, pet. granted, judgm't vacated w.r.m.) (quoting *Biggs v. GSC Enters., Inc.*, 8 S.W.3d 765, 769 (Tex. App.—Fort Worth 1999, no pet.)); *accord In re State Farm Mut. Auto. Ins. Co.*, 483 S.W.3d 249, 263 (Tex. App.—Fort Worth 2016, orig. proceeding). Further, "a damage award for physical pain is not always mandated when medical expenses are awarded." *Enright v. Goodman Distribution*, *Inc.*, 330 S.W.3d 392, 398 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The process of awarding damages for amorphous, discretionary injuries such as pain and suffering in a personal injury case is inherently difficult because the alleged injury is a subjective, unliquidated, non-pecuniary loss. *Laquey v. Cox*, No. 02-17-00005-CV, 2017 WL 4413353, at *1 (Tex. App.—Fort Worth Oct. 5, 2017, no pet.) (mem. op.); *Dollison v. Hayes*, 79 S.W.3d 246, 249 (Tex. App.—Texarkana 2002, no pet.). It is "particularly within the province of the jury" to set the amount of damages for pain and suffering, and "the jury has wide latitude in determining the amount of the award." *Laquey*, 2017 WL 4413353 at *1 (citing *Lanier v. E. Found. Inc.*, 401 S.W.3d 445, 455 (Tex. App.–Dallas 2013, no pet.)); *see also Tagle v. Galvan*, 155 S.W.3d 510, 518 (Tex. App.—San Antonio 2004, no pet.).

Joanna contends that the jury's award of $832.00 in compensation for her past physical pain is "clearly inadequate" and against the great weight and preponderance of the evidence.[2] The jury charge defined "physical pain" as follows: "Physical pain means the loss of enjoyment of life or the loss of the injured party's former lifestyle." The objective record evidence shows that Joanna suffered an injury, namely a bone fracture, and underwent surgery to correct it. As is typical in personal injury cases, the remaining evidence of Joanna's physical pain primarily consisted of her testimony, Ming's testimony, and medical records reflecting information she related to her care providers. Witness credibility is central to the claims of physical pain and, as a result, the jury's role in assessing damages in these categories is paramount. *See Ononiwu v.*

---

[2] Despite Joanna's argument to the contrary, a jury's award for past medical expenses does not make compulsory an accompanying award for physical pain. *See Enright v. Goodman Distribution, Inc.*, 330 S.W.3d 392, 398, 400-02 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (record supported award of zero damages for physical pain, even though jury awarded $15,199.00 for past medical expenses including surgery).

*Eisenbach*, 624 S.W.3d 37, 46 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (citing ***Diamond Offshore Servs. Ltd. v. Williams***, 542 S.W.3d 539, 552 (Tex. 2018)).

The parties do not dispute that Joanna refused medical attention after the fall and instead continued to work at Royale for several hours before driving home. Joanna testified at trial that she still experienced pain in her leg, particularly when sleeping. However, she was impeached by her 2021 deposition testimony, wherein she stated that the only remaining pain or discomfort in her left hip area was numbness caused by standing for too long. Although Joanna stated that she was at home recovering for "many months," could not bathe herself, and required a walker to ambulate for more than a year, her physical therapy records indicate that she was walking independently with a cane on June 13, 2019. Moreover, the record showed she never returned to Dr. Brannen after her surgery and that her third physical therapy visit on June 28 (less than two months after her injury) was the last time she sought medical treatment related to the slip and fall incident. The jury could have chosen to disbelieve that Joanna experienced significant pain based on her initial delay in seeking treatment and her subsequent discontinuance of such treatment and determined the appropriate amount of compensation after considering these factors. *See, e.g.*, ***Davis v. Vaughters***, No. 01-17-00612-CV, 2018 WL 5661317, at *8 (Tex. App.—Houston [1st Dist.] Nov. 1, 2018, no pet.) (mem. op.); ***Gutierrez v. Martinez***, No. 01-07-00363-CV, 2008 WL 5392023, at *6 (Tex. App.—Houston [1st Dist.] Dec. 19, 2008, no pet.) (mem. op.) (zero damages award for physical pain supported when plaintiff delayed seeking treatment and discontinued treatment after three months). Accordingly, we cannot conclude that the jury's award of $832.00 for past physical pain is against the great weight and preponderance of the evidence.

## Future Physical Pain

"An award of future damages in a personal injury case is always speculative." ***Stone v. Christiansen***, No. 02-22-00450-CV, 2023 WL 5766076, at *5 (Tex. App.—Fort Worth Sept. 7, 2023, no pet.) (mem. op.) (quoting ***Pipgras v. Hart***, 832 S.W.2d 360, 365 (Tex. App.—Fort Worth 1992, writ denied)). Thus, appellate courts are "particularly reluctant" to disturb a jury's findings concerning future damages categories. ***Pipgras***, 832 S.W.2d at 365.

Because Joanna never returned to Dr. Brannen after her surgery, he could not opine on the state of her recovery or give any future prognosis. And as aforementioned, Joanna sought no further medical treatment after discontinuing physical therapy. Although both Joanna and Ming

7

testified to her ongoing complaints of pain, the jury was permitted to disbelieve these witnesses, and implicitly did so here. *See Ononiwu*, 624 S.W.3d at 46. In particular, the jury had some reason to doubt Joanna's attestations of ongoing pain at trial, as she stated in her deposition that occasional numbness was the only lingering issue with her hip. It was the province of the finder of fact to resolve the inconsistencies in Joanna's testimony and determine which, if any, of her statements were credible. *See id.*; *Golden Eagle Archery*, 116 S.W.3d at 775. In doing so, the jury could reasonably decide from the evidence presented that Joanna had significantly recovered by the time of trial such that she would not suffer compensable physical pain going forward.

**Past and Future Mental Anguish**

The trial court instructed the jury that "'Mental anguish' implies a relatively high degree of mental pain and distress. It is more than mere disappointment, anger, resentment or embarrassment, although it may include all of these. It includes a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation."

"The mere fact of injury does not prove compensable pain and mental anguish." *Grant*, 406 S.W.3d at 364. Generally, to support an award of mental anguish damages, the plaintiff's evidence must describe "the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiff['s] daily routine." *See Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 797 (Tex. 2006) (quoting *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995)). The Texas Supreme Court has held that "some types of disturbing or shocking injuries have been found sufficient to support an inference that the injury was accompanied by mental anguish." *Parkway*, 901 S.W.2d at 445. But even when an occurrence is of the type for which mental anguish damages are recoverable, evidence of the nature, duration, and severity of the mental anguish is required. *Hancock v. Variyam*, 400 S.W.3d 59, 68 (Tex. 2013). The record must reflect more than the existence of "mere emotions" to support an award of damages for mental anguish. *Latham v. Castillo*, 972 S.W.2d 66, 70 (Tex. 1998).

The record contains almost no evidence pertaining to *any* mental distress Joanna might have suffered, let alone the high degree of distress described in the jury charge, and the evidence present is both indirect and subjective. The available medical records do not indicate that Joanna ever reported mental health symptoms to her care providers, and the vast majority of her (as well as Ming's) trial testimony focused on *physical* pain and impairment, rather than any impact the

8

slip and fall incident may have had on Joanna's emotional state. The jury was not required to infer mental anguish from the existence of Joanna's injury and could reasonably find that Joanna did not suffer compensable mental anguish as a result of the incident. *See Grant*, 406 S.W.3d at 364. The record is similarly devoid of evidence regarding the probability that Joanna may suffer mental anguish in the future and given the necessarily speculative nature of future damages awards, we are reluctant to disturb the jury's finding in this category of damages. *See Pipgras*, 832 S.W.2d at 365.

**Past and Future Physical Impairment**

In this case, the jury charge defined "physical impairment" as "the loss of enjoyment of life or the loss of the injured party's former lifestyle."[3] "[L]oss of enjoyment of life fits best among the factors a factfinder may consider in assessing damages for physical impairment. Indeed, if other elements such as pain, suffering, mental anguish, and disfigurement are submitted, there is little left for which to compensate under the category of physical impairment other than loss of enjoyment of life." *Golden Eagle Archery*, 116 S.W.3d at 772. The existence of objective evidence of an injury does not require us to conclude that a jury's failure to award damages for physical impairment is against the great weight and preponderance of the evidence. *Id.* at 774. A plaintiff generally must show that her physical impairment damages are substantial and extend beyond any pain, suffering, mental anguish, lost wages, or diminished earning capacity. *Id.*

Some record evidence supported a finding that Joanna's lifestyle changed negatively after her injury, namely her testimony that she could no longer wear high heeled shoes, walk to the lake, run, shop, or perform her own yard work, and Ming's testimony that he handled all of the house and yard work for approximately three years following the incident. However, as discussed *supra*, the record also contains conflicting evidence regarding the extent and length of Joanna's physical impairment, including the aforementioned inconsistencies about her use of mobility aids. And in her 2021 deposition, Joanna testified that she could sometimes operate a weed eater around her yard, although Ming still helped with the mowing. The jury was free to resolve these conflicts, find Joanna and Ming's testimony about her impairment not credible, and

---

[3] We note that "loss of enjoyment of life" is also specified in the charge's definition of physical pain, and that the panel was instructed to "[c]onsider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any."

assign little weight thereto. *See **Ononiwu***, 624 S.W.3d at 46. Similarly, the jury could reasonably have found (and implicitly did find) that Joanna suffered only a small amount of the type of "substantial effect beyond ordinary pain and suffering that is required to recover damages for physical impairment." *See **id.***

At trial, Joanna presented essentially no evidence of the likelihood of *future* impairment. As aforementioned, the evidence of past impairment was entirely subjective and contained multiple conflicts. However, there was no dispute that Joanna sought only very minimal medical treatment post-surgery, and no medical professional provided testimony regarding the probability that any existing impairment would continue or any new impairment would arise in the future. And on appeal, she does not attempt to direct us to specific evidence regarding future physical impairment, instead stating that "[t]he jury was provided with uncontroverted objective evidence of Joanna Wei's injury"—the existence of which does not require an award of physical impairment damages. *See **Golden Eagle Archery***, 116 S.W.3d at 774. Under the circumstances of this case, we decline to disturb the jury's finding on past and future physical impairment.

**Past and Future Disfigurement**

The jury charge defined "disfigurement" as "that which impairs the appearance of a person, or that which renders unsightly, misshapen or imperfect, or deforms in some manner." There is little record evidence pertaining specifically to disfigurement. Joanna claimed at trial that her surgical scar prevented her from wearing a two-piece swimsuit but did not expressly testify that she considered herself disfigured or deformed or that she was embarrassed by the scar. Although the nature of the surgery may have prevented her from displaying the scar itself at trial, the record contains no photos, videos, or detailed descriptions of the scar from which the jury could have determined any "unsightly" quality. Joanna used her hands to demonstrate the size of the scar during her testimony, but did not verbally quantify its size. Dr. Brannen testified that he made a "one to two centimeter incision" to facilitate Joanna's surgery, and closed the incision with sutures and glue after placing the screws. However, because Joanna attended no further appointments after surgery, Dr. Brannen could not opine on the extent of any permanent scarring.

The mere presence of a surgical scar does not automatically constitute compensable disfigurement. ***Wal-Mart Stores, Inc. v. Tinsley***, 998 S.W.2d 664, 673 (Tex. App.—Texarkana 1999, pet. denied); ***Belford v. Walsh***, No. 14-09-00825-CV, 2011 WL 3447482, at *8 (Tex.

10

App.—Houston [14th Dist.] Aug. 9, 2011, no pet.) (mem. op.). In **Belford**, the plaintiff testified that surgical incisions on his back and neck left scars, but the jury awarded zero damages for disfigurement. **Belford**, 2011 WL 3447482 at *9. In affirming the award, the appellate court reasoned that Belford did not show the scars to the jury and did not testify to any emotional impact; moreover, the documentary evidence did not depict or describe any surgical scars, and no other witness testified as to their existence. **Id.** We note once more that in the absence of any objective evidence, the jury was free to disbelieve Joanna's testimony in this case about the existence, size, and severity of the scar, and ultimately find that if the scar existed, she was not disfigured thereby. **Id.** at *8 (jury has "considerable discretion" in determining whether a person has been disfigured and determining the appropriate compensation).

Joanna also alleged that the injury altered her gait, but conflicting evidence was presented at trial. Joanna testified that she now leans noticeably to the right while walking and felt embarrassed when her friends told her she "walk[ed] crooked." However, in her 2021 deposition, Joanna testified, "I can walk normally." In light of this conflict, the jury had the discretion to choose which version of the evidence to accept, and implicitly chose either to accept the latter version, or find that any changes to Joanna's gait were not disfiguring. *See* **McKnight v. Calvert**, 539 S.W.3d 447, 460 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

Joanna further challenges the factual sufficiency of the evidence to support the jury's award of zero damages for future disfigurement. "The matter of future disfigurement is necessarily speculative and there is no mathematical yard stick by which one can measure damages for it." **Figueroa v. Davis**, 318 S.W.3d 53, 64 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing **Tri–State Motor Transit Co. v. Nicar**, 765 S.W.2d 486, 494 (Tex. App.—Houston [14th Dist.] 1989, no writ)). "Each case must be judged on its own facts and considerable discretion must be vested in the jury." **Id.**

At trial, Joanna presented no evidence that she was likely to endure any further scarring or deformity in relation to the slip and fall incident. And although an award for future disfigurement may be based on future embarrassment caused by the disfigurement rather than additional or increased deformity, the jury was free to disbelieve Joanna's testimony regarding past embarrassment related to her scar and alleged change in gait, and refuse to infer that any such embarrassment would persist into the future. *See* **Hopkins Cty. Hosp. Dist. v. Allen**, 760 S.W.2d 341, 344 (Tex. App.—Texarkana 1988, no writ); **Gonzales**, 2020 WL 1966290 at *4.

**Summation**

On this record, we conclude that the jury's damages findings for past physical pain and past physical impairment, as well as its zero-damages findings for future physical pain, past and future mental anguish, future physical impairment, and past and future disfigurement are not so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Ononiwu*, 624 S.W.3d at 44. Furthermore, the jury's findings do not shock the conscience or clearly demonstrate bias. *See Golden Eagle Archery*, 116 S.W.3d at 775. Because the jury's findings were supported by factually sufficient evidence, we conclude that the trial court did not abuse its discretion in denying Joanna's motion for new trial. We overrule her sole issue.

**DISPOSITION**

Having overruled Joanna's sole issue, we *affirm* the judgment of the trial court.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered May 31, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

12



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 31, 2024**

**NO. 12-23-00309-CV**

**JOANNA WEI,**
Appellant
V.
**LUFKIN ROYALE NAIL SPA 75901, LLC D/B/A ROYALE NAIL SPA,**
Appellee

Appeal from the 159th District Court
of Angelina County, Texas (Tr.Ct.No. CV-00741-21-01)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellant, **Joanna Wei**, for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*